FILED

2016 APR 15 P 3:37

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| BOOKING.COM B.V.,<br>Herengracht 597, 1017 CE<br>Amsterdam, Netherlands<br><br>    Plaintiff,<br><br>v.<br><br>MICHELLE K. LEE,<br>in her official capacity as Director of the<br>United States Patent and Trademark Office; and<br><br>THE UNITED STATES PATENT AND<br>TRADEMARK OFFICE<br><br>    Serve:<br>    Office of the General Counsel<br>    U.S. Patent and Trademark Office<br>    Madison Bldg. East, Room 10B20<br>    600 Dulany Street<br>    Alexandria, VA 22314<br><br>    Attorney General of the United States<br>    Main Justice Building<br>    10th & Constitution Ave, NW<br>    Washington, DC 20530<br><br>    U.S. Attorney for the Eastern Dist. of Va.<br>    2100 Jamieson Avenue<br>    Alexandria, VA 22314<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:16-cv-425<br>) (LMB/JFA)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Booking.com B.V. ("Plaintiff"), by its undersigned attorneys, Foley & Lardner LLP, for its Complaint against defendants Michelle K. Lee, in her official capacity as the

4817-4239-6463.1

Director of the United States Patent and Trademark Office (the "Director"), and the United States Patent and Trademark Office (the "PTO"), alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Booking.com B.V. is a Dutch limited liability company with an office at Herengracht 597, 1017 CE Amsterdam, Netherlands.

2. Michelle K. Lee is the Director of the U.S. Patent and Trademark Office with an address at P.O. Box 1450, Alexandria, Virginia 22313-1450.

3. The PTO is a federal agency within the United States Department of Commerce. The agency is located at 600 Dulany Street, Alexandria, Virginia 22314.

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 21(b) of the U.S. Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. Sec. 1071(b), which provides that a party dissatisfied with a final decision of the Trademark Trial and Appeal Board ("TTAB") may institute a new civil action in a Federal District Court challenging such decision. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1331.

5. Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391(e)(1)(A).

## FACTUAL BACKGROUND

6. Booking.com operates one of the best known travel and accommodations sites in the world under the trademark BOOKING.COM, with among the most loyal consumer following for such travel and accommodations services.

7. Plaintiff has been using the trademark BOOKING.COM since at least as early as 2006, approximately ten years, before which time it used the similar mark BOOKINGS.NL since at least as early as 1997.

4817-4239-6463.1

8. Plaintiff has used the trademark BOOKING.COM extensively in the United States and around the world and has spent millions of dollars on advertising in the United States, including advertising on dozens of national television channels, in movie theaters across America, and on highly popular Internet channels.

9. Through its extensive advertising, Plaintiff's BOOKING.COM advertisements have reached hundreds of millions of Americans over many years.

10. Plaintiff has invested enormous resources into developing a strong brand identity and superior service and, as a result, has acquired significant consumer goodwill in its BOOKING.COM trademark.

11. Plaintiff's BOOKING.COM branded website receives millions of unique visitors from the United States per month.

12. Over 1,000,000 room nights are reserved through Plaintiff's BOOKING.COM service every day.

13. On the social media website, Facebook.com, over 4.5 million people have "liked" BOOKING.COM.

14. On the micro-blogging site Twitter, over 92,400 people are "following" the BOOKING.COM brand.

15. Millions of Americans have affirmatively sought to join Plaintiff's BOOKING.COM mailing list, demonstrating significant consumer loyalty.

16. Plaintiff's BOOKING.COM branded website was recently picked by JD Power and Associates, a premier research and analytics firm, as having the highest customer satisfaction rate of any travel site in the United States.

4817-4239-6463.1

17. Plaintiff's BOOKING.COM branded website and related offerings have won numerous other industry awards including, among others, recent "Gold" level and "Silver" level Adrian awards for various advertising campaigns from Hospitality Sales & Marketing Association International, the hospitality industry's leading advocate for intelligent, sustainable hotel revenue growth, a 2015 "Gold" level Effie award in Travel and Tourism from the North America Effie Awards which honor the most effective marketing campaigns in North America, and "Best Mobile Site" and "Best Tablet App" awards from Mobile Travel & Tourism.

<u>U.S. Trademark Application History</u>

18. On December 1, 2011, Booking.com filed a federal trademark application based on use, for the mark  , Serial No. 85/485,097 for:

Class 39: Travel agency services, namely, making reservations for transportation; travel and tour ticket reservation services; travel agency services, namely, making reservations for transportation for tourists; provision of travel information; providing consultation related to making reservations for transportation, and travel and tour ticket reservation; all of the foregoing services rendered in-person and via the internet.

Class 43: Making hotel reservations for others in person and via the internet; providing personalized information about hotels and temporary accommodations for travel in-person and via the Internet; providing on-line reviews of hotels; consultation services related to making hotel reservations for others, provision of personalized information about hotels and temporary accommodations for travel, and on-line reviews of hotels.

19. On June 5, 2012, Booking.com filed a federal trademark application under the Madrid Protocol for the mark BOOKING.COM, Serial No. 79/114,998, for:

4817-4239-6463.1

Class 39: Arranging of tours and arranging of tours online; reservation and sale of travel tickets and online reservation and sale of travel tickets; information, advice and consultancy regarding the arranging of tours and the reservation and sale of travel tickets; provision of information relating to travel and travel destinations; travel and tour agency services, namely, travel and tour ticket reservation services; travel agency services; tourist agency services; providing online travel and tourism services, namely, providing online travel and tour ticket reservation services, online travel agency services, online tourist agency services and providing online information relating to travel and travel destinations.

Class 43: Making hotel reservations for others; holiday accommodation reservation services and resort reservation services, namely, providing hotel room reservation services and resort hotel reservation services and providing online hotel and resort hotel room reservation services; providing information about hotels, holiday accommodations and resorts accommodations, whether or not based on the valuation of customers; providing information, advice and consultancy relating to making hotel reservations and temporary accommodation reservations; providing online information, advice and consultancy relating to making hotel reservations and temporary accommodation reservations.

20. On November 7, 2012, Booking.com filed a federal trademark application under the Madrid Protocol for the mark **Booking.com**, Serial No. 79/122,365, for:

Class 43: Hotel reservation services for others; holiday accommodation reservation services and resort reservation services, namely, providing hotel room reservation services and resort hotel reservation services and providing online hotel and resort hotel

4817-4239-6463.1

room reservation services; providing information about hotels, hotel accommodations and resorts accommodations, whether or not based on the valuation of customers; information, advice and consultancy relating to the aforesaid services; the aforesaid services also provided electronically."

21. On November 7, 2012, Booking.com filed a federal trademark application under the Madrid Protocol, for the mark Booking.com, Serial No. 79/122,366, for:

Class 43: Hotel reservation services for others; holiday accommodation reservation services and resort reservation services, namely, providing hotel room reservation services and resort hotel reservation services and providing online hotel and resort hotel room reservation services; providing information about hotels, hotel accommodations and resorts accommodations, whether or not based on the valuation of customers; information, advice and consultancy relating to the aforesaid services; the aforesaid services also provided electronically.

22. On October 13, 2012, Application Serial No. 85/485,097 was approved for publication by the PTO.

23. After Application Serial No. 85/485,097 was approved for publication, it was unexpectedly withdrawn from publication on November 28, 2012, at which time the PTO issued an Office Action refusing registration on the dual grounds the mark is either merely descriptive for the identified services pursuant to 15 U.S.C. Sec.§ 1052(e)(1) or is generic for the identified services.

24. In due course, similar Office Actions issued for applications Serial Nos. 79/114,998, 79/122,365 and 79/122,366, rejecting each application on the same alternate grounds of mere descriptiveness or genericness.

25. Following a series of responses and further Office Actions, final refusals were issued for all four applications on the same dual grounds.

26. On April 28, 2014, May 19, 2014, and October 13, 2014, Plaintiff filed Notices of Appeal with the Trademark Trial and Appeal Board ("TTAB").

27. On December 12, 2014, upon Plaintiff's request, the TTAB consolidated all four appeals.

The PTO Decision

28. On February 18, 2016, following briefing and oral argument, the TTAB issued three orders affirming the refusal to register Plaintiff's BOOKING.COM marks on the asserted grounds that the mark BOOKING.COM is generic or, in the alternative, that BOOKING.COM is merely descriptive and Plaintiff had failed to prove the mark had acquired secondary meaning. (The TTAB issued a combined Order for Application Serial No. 79/122365 and Application Serial No. 79/122366).

29. A generic term "is the common descriptive name of a class of goods or services." *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 965 (Fed. Cir. 2015).

30. A generic term is one that designates an entire class of goods or services, rather than the producer of those goods or services.

31. In denying Booking.com's appeal, the TTAB erred in defining the relevant class of goods or services by holding that BOOKING.COM is generic for a type of service the TTAB called "hotel room reservation services and other lodging services reservation services, with related information, advice and consultancy, including such services provided online."

32. The TTAB's proffered genus of services, namely "hotel room reservation services and other lodging services reservation services, with related information, advice and consultancy,

7

4817-4239-6463.1

including such services provided online," is not a coherent genus or class of services at all; rather, it is a gerrymandered and serpentine subset of several distinct services falling under the umbrella of travel agency services.

33. A more accurate summary of the type of services offered by Booking.com (and its proposed definition of the genus of its services) was and is simply "travel agency services."

34. The TTAB itself acknowledged that the definition of a travel agency is "a business that accommodates travelers, as by securing tickets, arranging for reservations, and giving information."

35. Booking.com is a business that accommodates travelers, as by arranging for reservations, and giving information.

36. In denying Booking.com's appeal, the TTAB correctly acknowledged that a finding of genericness must be supported by "clear evidence" that the "primary significance" of the term is generic.

37. In denying Booking.com's appeal, the TTAB correctly acknowledged that genericness is an issue of fact that must be decided on the facts of each case.

38. In denying Booking.com's appeal, the TTAB correctly acknowledged that "it is impossible to use BOOKING.COM in a grammatically coherent way to refer generically to anything."

39. In denying Booking.com's appeal, the TTAB further correctly acknowledged that "it is not at all logical to refer to a type of product or service as a 'booking.com.'"

40. Consistent with the TTAB's findings that BOOKING.COM cannot be used in a grammatically coherent way to refer generically to anything, there is no evidence in the entire

4817-4239-6463.1

history of Booking.com's use of its trademark that any other parties offering travel agency services refer to themselves as "Booking.com's."

41. Consistent with the TTAB's findings that BOOKING.COM cannot be used in a grammatically coherent way to refer generically to anything, there is no evidence in the entire history of Booking.com's use of its trademark that any consumers or users of travel agency services refer to such sites as "Booking.com's."

42. There is no actual evidence that Plaintiff's actual claimed trademark BOOKING.COM "is the common descriptive name of a class of goods or services."

43. Not only is it "impossible to use BOOKING.COM in a grammatically coherent way to refer generically to anything," but a recent consumer survey (conducted after the TTAB decision) demonstrates that 75% of consumers recognize BOOKING.COM as a trademark, not a common name.

44. The consumer survey commissioned by Booking.com confirms that the primary significance of the term BOOKING.COM among the relevant class of consumers is as a trademark, not as a common name.

45. It is also impossible for consumers to have selected BOOKING.COM as the travel service in which they have the highest customer satisfaction, as demonstrated by the J.D. Power survey, if they did not recognize BOOKING.COM as the name of a particular travel service.

46. It is equally impossible for millions of Americans to have expressed their loyalty to BOOKING.COM through consumer newsletter subscriptions and social media such as Facebook and Twitter if they did not recognize BOOKING.COM as the name of a particular travel service.

4817-4239-6463.1

47. The only purported "evidence" of genericness cited by the TTAB consisted of lengthy character strings of third party domain names, such as "instantworldbooking.com," in which one must hunt to find the characters "b-o-o-k-i-n-g-.-c-o-m," much like playing a children's game of word-finder.

48. There is no factual or logical basis on which to infer from a lengthy character string such as "instantworldbooking.com," that consumers ascribe to a small subset of the entire character string a primary meaning independent of that entire character string.

49. The only reason one would look for a specific term such as BOOKING.COM in a longer string of characters such as "instantworldbooking.com" (as the TTAB did in rendering its decision) is that term already has independent meaning to warrant looking for it. As a result, the TTAB's evidence is not relevant to establishing the meaning of the actual term in issue, BOOKING.COM.

50. There is no empirical evidence to explain or support the TTAB's assumption that such word-finder games offer any insights into what is the primary significance of the actual mark in issue, BOOKING.COM, to consumers.

51. In denying Booking.com's appeal, the TTAB incorrectly declined to acknowledge, much less apply (or even attempt to distinguish), the century-old bedrock legal principle that a mark must be assessed in its entirety, not in pieces, as established by such cases as *Estate of P.D. Beckwith v. Comm'r of Patents*, 252 U.S. 538 (1920); *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 U.S.P.Q.2d. 1807 (Fed. Cir. 2001), and *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960 (Fed. Cir. 2015).

52. Despite the fact that Booking.com made clear that its central legal arguments were premised on these three prior decisions, the TTAB never once acknowledged or cited the

4817-4239-6463.1

controlling precedents, *Estate of P.D. Beckwith* or *Princeton Vanguard, LLC* and only mentioned *In re Dial-A-Mattress Operating Corp.* for other points.

53. Despite the fact that Booking.com made clear that its central legal arguments were premised on these three prior decisions, the TTAB never attempted to reconcile its decision with these prior controlling precedents.

54. The failure of the TTAB to cite or even attempt to distinguish these three leading precedents is an acknowledgement of the impossibility of reconciling its conclusion with settled and controlling law.

55. Rather than assess the mark BOOKING.COM as a whole (under which a finding of genericness is impossible given the TTAB's findings that "it is impossible to use BOOKING.COM in a grammatically coherent way to refer generically to anything"), the TTAB instead broke the composite mark BOOKING.COM into component pieces, "BOOKING" and ".COM" and speculated that it was possible for consumers to "understand" a term they cannot use generically to be generic nonetheless because of the meanings of the component pieces, "BOOKING" and ".COM."

56. Under the TTAB's unsupported method of analysis, the famous trademark COCA-COLA, which consists of two generic terms, would also be generic.

57. The TTAB's conjecture as to how consumers might possibly "understand" the trademark BOOKING.COM simply by analyzing the elements "BOOKING" and ".COM" separately is contrary to instruction in *Princeton Vanguard, LLC* that there can be "no short-cut" to assessing the primary significance of a claimed mark, and that the test for genericness is the same regardless of whether the mark is a compound term or a phrase.

4817-4239-6463.1

58. The TTAB's conjecture as to how consumers might possibly "understand" the trademark BOOKING.COM in a manner inconsistent with any grammatical or logically possible *use* of the name does not satisfy the TTAB's burden to prove by clear evidence that BOOKING.COM *is* "the common descriptive name of a class of goods or services."

59. The TTAB's assumption that there is some linguistically comprehensible way for the public to "*understand* [a] term to *refer* to a genus," even if the term logically cannot be *used* as the actual *name* of the genus is supported by no empirical evidence, much less "clear evidence."

60. The TTAB articulated no basis in law, logic or linguistics for its theory that a term can have as its primary meaning a meaning divorced from how the term can be used.

61. There is no basis in law, logic or linguistics for the TTAB's new theories of human cognition and understanding.

62. There is no basis in law, logic or linguistics for the TTAB's speculation that it is possible that the name BOOKING.COM can be "'*understood*' primarily to refer to an online service for making bookings" even if logically it cannot be used that way and even where there is no empirical evidence the name *is* used that way by the relevant purchasing public.

63. The primary meaning of the word "booking" alone in the dictionaries cited by the TTAB is "an arrangement for a person or group (such as a singer or band) to perform at a particular place."

64. A further meaning of the word "booking" alone in soccer is: "the act of officially recording the name of a player who has broken the rules in a game."

65. The word "booking" also has a slang meaning: "cool."

66. The word "booking" also has a slang meaning as a verb: "to leave quickly."

12

67. The word "booking" has a further colloquial meaning: "running really fast."

68. Because of the many different meanings and inherent ambiguity of the word "booking," it is unlikely consumers would adopt the term BOOKING.COM as "the common descriptive name of a class of goods or services."

69. Because the trademark BOOKING.COM is also a URL, it cannot be used by any other third parties.

70. Because the trademark BOOKING.COM is also a URL that cannot be used by any other third parties, it is all but impossible for it to achieve recognition as a generic term.

71. The TTAB decision that the name BOOKING.COM is generic is in derogation of the PTO's own published policy that "if a proposed mark is composed of merely descriptive term(s) combined with a TLD, the examining attorney must refuse registration on the Principal Register under Trademark Act § 2(e)(1), 15 U.S.C. § 1052(e)(1), on the ground that the mark is *merely descriptive*." See TMEP § 1215.04.

72. In denying Booking.com's appeal, the TTAB also erred in holding that the mark BOOKING.COM has not acquired distinctiveness in the marketplace.

73. Plaintiff submitted ample evidence of its extensive advertising, commercial impact, market share, and consumer loyalty to establish the acquired distinctiveness of the mark BOOKING.COM, all of which the TTAB incorrectly ignored.

74. In denying Booking.com's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that over 2 million Americans had already affirmatively sought to join Plaintiff's BOOKING.COM mailing list, demonstrating significant consumer loyalty.

4817-4239-6463.1

75. In denying Booking.com's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that over 2.7 million members of the relevant public had already "liked" Plaintiff's brand and nearly 58,000 members of the relevant public were already "talking about" Plaintiff's brand on Facebook.com, higher than other accommodations and travel companies such as TRAVELOCITY, HOTELS.COM, TRAVELZOO, and ORBITZ.

76. In denying Booking.com's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that over 53,200 members of the relevant public were already "following" Plaintiff's brand on the micro-blogging website Twitter, more than other travel and accommodations sites like HOTELS.COM, TRIVAGO, and HOTWIRE.

77. In denying Booking.com's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that over 10 million unique U.S. customers had (as of that date) sought out Plaintiff's BOOKING.COM branded website services through its branded website on a monthly basis and conducted billions of dollars' worth of transactions.

78. In denying Booking.com's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that, on average, over 625,000 room nights were reserved through Plaintiff's BOOKING.COM service every day in 2012 and 2013.

79. In denying Booking.com's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process) that plaintiff's BOOKING.COM branded website had been picked by JD Power based on consumer surveys as having the highest customer satisfaction rate of any travel site in the United States.

4817-4239-6463.1

80. In denying Booking.com's appeal, rather than consider the above evidence, the TTAB instead relied primarily on its "word-finder" approach (described above) in which it was able to spot the character string "b-o-o-k-i-n-g-.-c-o-m" from amidst longer domain names, such as "instantworldbooking.com," without any evidence that the actual term BOOKING.COM has ever been used by any other parties.

81. In denying Booking.com's appeal, rather than consider Plaintiff's evidence that a search for Applicant's mark BOOKING.COM on the Google News service generated over two thousand (2,000) unsolicited news articles, the TTAB instead relied on one article from January 23, 2013 referring to Booking.com as a "[h]otel booking giant."

82. In relying on one January 23, 2013 article, the TTAB mistakenly inferred from the negative statement in the article that "many Americans are unfamiliar with the brand," the false positive conclusion that BOOKING.COM is *not* a brand and that there are not vast numbers of Americans who *are* familiar with the brand.

83. In denying Booking.com's appeal, rather than consider Plaintiff's evidence of thousands of press notices, the TTAB mistakenly concluded, without basis, that "the press notices are few in number."

84. In denying Booking.com's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that there were already tens of thousands of unsolicited consumer reviews of the BOOKING.COM service on third party review websites, demonstrating significant consumer recognition of BOOKING.COM as pointing to a single source of travel agency services.

85. The TTAB erred in not reversing the refusal of registration of Plaintiff's applications for the mark BOOKING.COM and in refusing to consider all of Plaintiff's submitted evidence.

## FIRST CAUSE OF ACTION

86. Plaintiff incorporates by reference the paragraphs 1 through 85 above as if the same were fully set forth herein.

87. The primary significance of the term BOOKING.COM should be declared to be as a trademark in connection with travel agency services, and the Director should be directed forthwith to pass the mark to publication.

## SECOND CAUSE OF ACTION

88. Plaintiff incorporates by reference the paragraphs 1 through 87 above as if the same were fully set forth herein.

89. The term BOOKING.COM should be declared to be either inherently distinctive or to have acquired distinctiveness pursuant to section 2(e) of the Lanham Act, 15 U.S.C. § 1052(e)(1), and the Director should be directed forthwith to pass each application to publication.

## **PRAYER OF RELIEF**

WHEREFORE, Plaintiff requests this Court enter judgment:

(a) Reversing the decisions of the TTAB, dated February 18, 2016, and directing the Director forthwith to pass each application to publication for registration on the Principal Register; and

(b) Awarding Plaintiff such other relief as this Court may deem just and proper.

Dated: April 15, 2016                    Respectfully submitted,

FOLEY & LARDNER LLP

By: _____
Brian J. Kapatkin (VSB No. 75061)
Katherine Califa (*pro hac vice* application pending)
3000 K St. NW, Suite 600
Washington, D.C. 20007
bkapatkin@foley.com
kcalifa@foley.com
Telephone: (202) 672-5300
Facsimile: (202) 672-5399

and

Jonathan E. Moskin (*pro hac vice* application pending)
90 Park Avenue
New York, NY 10016
jmoskin@foley.com
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

*Attorneys for Plaintiff*
*Booking.com B.V.*

4817-4239-6463.1