# Exhibit B

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| BOOKING.COM B.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE K. LEE, | ) | Civil Action No. 1:16-cv-425-LMB-IDD |
| Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of | ) | |
| the United States Patent and | ) | |
| Trademark Office, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF EDWARD A. BLAIR

I, Edward A. Blair, hereby declare as follows:

1.     I am over eighteen (18) years of age and believe in the obligations of an oath.

2.     The attached is a true and correct copy of my expert report in this case.  The statements I made in that report represent my professional opinion on the matters discussed.

*I hereby declare under penalty of perjury that the foregoing is true and correct.*

Dated: October 14, 2016

_____
Edward A. Blair, Ph.D.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **BOOKING.COM B.V.,** | | |
| Plaintiff, | | |
| v. | | Civil Action No. 1:16-cv-425-LMB-IDD |
| **MICHELLE K. LEE**, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, et al., | | |
| Defendants. | | |

**EXPERT REPORT OF EDWARD A. BLAIR, Ph.D.**

**Summary**

I was asked by The United States Patent and Trademark Office (USPTO) to render my opinion concerning the September, 2016, expert report submitted by Mr. Hal Poret in the above-captioned matter. Specifically, I was asked to examine the survey that Mr. Poret designed and caused to be conducted (the "Poret Survey") and comment on any factors that might influence the results or interpretation of that survey regarding the extent to which BOOKING.COM is perceived to be a brand name or a common name.

In my opinion, the following factors are relevant to the results obtained or the proper interpretation of the Poret Survey regarding the extent to which BOOKING.COM is perceived to be a brand name or a common name. First, the population surveyed is under-inclusive. The Poret Survey is restricted to "consumers who search for or make hotel or travel arrangements online." However, none of the trademark applications at issue are limited to services provided online, and thus the relevant population includes consumers who search for or make hotel or travel arrangements other than online. The restriction of respondents to those "who search for or make hotel or travel arrangements online" makes the Poret Survey under-inclusive. This is relevant to the results because consumers who do not use online services may be less aware of BOOKING.COM, and hence the percentage of respondents who said that BOOKING.COM is a brand name (given response options of brand name, common name, or don't know) may have been lower if the survey included all relevant consumers. Second, the Poret Survey did not effectively educate or test respondents regarding the distinction between DOT-COM brand names and common names. It appears that there was some tendency for respondents to think that any DOT-COM name is a brand. Third, the order in which DOT-COM terms were presented to respondents made a significant difference in the results. These response order effects reinforce the idea that respondents were not effectively educated or tested regarding the distinction between DOT-COM brand names and common names, and indicate that respondents appear to be answering based on context and inference rather than actual knowledge.

## EXPERT REPORT OF EDWARD A. BLAIR, Ph.D.

<u>**CONTENTS**</u>                                                                                    <u>**PAGE**</u>

**Expert's Qualifications, Background and Compensation**                        **3**

**Assignment and Materials Reviewed**                                                   **4**

**Background on the Poret Survey**                                                         **5**

**Comments on the Poret Survey**                                                        **11**

**Appendix 1: Expert's CV**

**Appendix 2: Expert's List of Lawsuits**

### Expert's Qualifications, Background and Compensation

My name is Edward A. Blair. I am the Michael J. Cemo Professor of Marketing & Entrepreneurship and Chairman of the Department of Marketing and Entrepreneurship in the C.T. Bauer College of Business at the University of Houston in Houston, Texas. I also work as an independent consultant, and it is in that capacity that I write this report.

I have served as chair of the American Statistical Association Committee on Energy Statistics which advises the U.S. Energy Information Administration on statistical matters. I previously served on the U.S. Census Bureau Advisory Committee. I also have served as national conference chair for the American Marketing Association (AMA).

I am the author of various publications on marketing and survey research procedures and have served on the editorial boards of the *Journal of Marketing Research*, *Journal of the Academy of Marketing Science*, and *Journal of Business Research*, and the policy board for the *Journal of Consumer Research*. Books that I have co-authored include *Designing Surveys (3e)* and *Applied Survey Sampling*.

I have taught graduate-level university courses on Marketing Research, Survey Methods, Sampling, Statistics, and Multivariate Analysis. I also taught Sampling and Survey Methods at the AMA's School of Marketing Research from its inception in 1980 through 1999.

I have testified in lawsuits and been accepted as an expert in state and federal courts. A professional resume showing further information including a list of publications is shown as Appendix 1 to this report, and a list of lawsuits in which I have testified in recent years is shown as Appendix 2. My hourly consulting rate is $500 per hour. My compensation is not contingent upon the results of this matter.

## Assignment and Materials Reviewed

I was asked by The United States Patent and Trademark Office (USPTO) to render my opinions concerning the September, 2016 expert report submitted by Mr. Hal Poret in the above-captioned matter. Specifically, I was asked to examine the survey that Mr. Poret designed and caused to be conducted (the "Poret Survey") and comment on any factors that might influence the results or interpretation of that survey regarding the extent to which BOOKING.COM is perceived to be a brand name or a common name.

In this regard, I have reviewed the following materials:

- Expert report of Hal Poret

- Plaintiff's Complaint in this matter

- Defendant's Answer

- Trademark Application Serial Nos. 79122365, 79122366 79114998, and 85485097 for BOOKING.COM

- Trademark Trial and Appeal Board (TTAB) opinions regarding Application Serial Nos. 79122365, 79122366 79114998, and 85485097 for BOOKING.COM

- Applicant's January 16, 2007 Request for Remand of Application to Examining Attorney to Consider New Evidence Pursuant to Trademark Rule 2.142(d) in *In Re Hotels.com* (Application Serial No. 78/277681, TTABVUE 10)

- TTAB opinion in *In re Hotels.com, L.P.*, 87 U.S.P.Q.2d 1100 (TTAB 2008)

- The Federal Circuit's opinion in *In re Hotels.com, L.P.,* 573 F.3d 1300 (Fed. Cir. 2009);

- The Federal Circuit's opinion in *In re 1800Mattress.com IP, LLC*, 586 F.3d 1359 (Fed. Cir. 2009)

- The Ninth Circuit's opinion in *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974 (9th Cir. 2010)

**Background on the Poret Survey**

According to Mr. Poret's report, the Poret Survey included the following elements.

*Sample Qualifications*

The survey was conducted online with a total of 400 respondents "among consumers who search for or make hotel or travel arrangements online."[1]

Potential respondents were asked: "In the past 6 months, which of the following, if any, have you used a website or mobile app for?" One of the response options was: "To search for or make hotel or travel arrangements." Respondents who selected this option were considered part of the relevant population and qualified to participate in the survey.[2]

Potential respondents also were asked "In the next 6 months, which of the following, if any, are you likely to use a website or mobile app for?" with the same list of options. Respondents who selected "To search for or make hotel or travel arrangements" in response to this question were also considered part of the relevant population and qualified to participate in the main survey.[3]

*Measurement Procedures*

The Poret Survey used a Teflon format for assessing whether a term is a brand name or a common name. There were two versions of the survey, one in which references to "brand name" always preceded references to "common name," and one in which references to "common name" always came first.[4] The version with brand name first proceeded as follows.[5]

Respondents saw a computer screen that said:

---

[1] Poret Report p. 8 (B-000008).
[2] Poret Report p. 19 (B-000019).
[3] Poret Report p. 20 (B-000020).
[4] Poret Report p. 8, 15 (B-000008, B-000015).
[5] The following description is taken from Poret Report p. 9-13 (B-000009 – B000013).

5

"This survey is about brand names and common names. In a few moments you will be asked about a number of terms that you may or may not have seen or heard before. But first, please read the next two screens about what we mean by a brand name and what we mean by a common name."

On a new screen, respondents were told:

"Brand names are names that companies use to identify who a product or service comes from.  Brands names primarily let the consumer know that a product or service comes from a specific company.

For example, TOYOTA, CHASE, and STAPLES.COM are all brand names.  These terms primarily identify for a consumer who a product or service comes from."

On the next screen, respondents were told:

"Common names are words used to identify a type of product or service – in other words, what the product or service is, not who makes it.  Common names primarily let the consumers know what type of product or service is being offered.

For example, unlike the brand names TOYOTA, CHASE, and STAPLES.COM; AUTOMOBILE, BANK, AND OFFICESUPPLIES.COM are all common names.  These terms primarily identify for the consumer what type of product or service a company is selling, rather than who the product or service comes from."

Respondents were then asked:

"Do you understand the difference between a brand name and a common name?"

Respondents who answered "Yes" continued with the interview. Those who indicated

they did not understand or were unsure did not continue.

Next, respondents were asked:

"Which type of name would you say KELLOGG is?"

Respondents were also asked:

"Which type of name would you say CEREAL is?"

Response options to both questions were: Brand name, Common name, and Don't know.

Respondents who correctly answered that KELLOGG is a brand name and that CEREAL is a

common name continued with the survey. Respondents who did not correctly answer both these

questions were excluded from the survey.

Respondents who continued were then instructed:

"You will now see a series of bolded terms, one at a time, that you may or may not have seen or heard before. Under each term, you will also see a description of products or services for that term. For each term shown in bold, please answer whether you think the term is a brand name or a common name in the context of the products or services described. Or if you don't know, you may select that option."

Then, one at a time, respondents were shown one of seven terms with product descriptions until

all seven terms had been seen. For each term, respondents were asked:

"Do you think this is a ..." (Response options: Brand name, Common name, Don't know)

The list of terms and product descriptions shown to respondents included the following

term at issue:[6]

BOOKING.COM
Hotel and other lodging reservation services

Three brand name terms:

ETRADE.COM
Stock and investor broker services

PEPSI
Cola and other soft drinks

SHUTTERFLY
Photo-sharing and photo gifts service

---

[6] Poret Report p. 12-13 (B-000012 – B000013).

And three common name terms:

SPORTING GOODS
Products used in sports and other physical activity

WASHINGMACHINE.COM
Reviews and sales of washing machines

SUPERMARKET
Retail sale of food and other groceries

An issue of apparent concern to Mr. Poret was the possibility that respondents might think that any DOT-COM name is a brand. His report states that "in order to address possible concerns that survey respondents might answer that any DOT-COM name is a brand... the list of terms shown in the Teflon study included other DOT-COM terms to assess and control for the extent to which respondents might assume and answer that any DOT-COM term is a brand name. This allows us to compare the perceptions of BOOKING.COM to other DOT-COM terms that clearly do or do not function as brands in order to assess whether consumer perception of BOOKING.COM as a brand name meaningfully exceeds the rate at which respondents will answer that a generic term with ".com" at the end is a brand."[7]

Specifically, Mr. Poret's report states that "ETRADE.COM was included in the lineup of terms as an example of a DOT-COM brand name and WASHINGMACHINE.COM was included as an example of a DOT-COM generic term. The inclusion of WASHINGMACHINE.COM in particular allows us to assess the extent to which respondents will identify a generic term as a brand when '.com' is added to the end, and to assess the extent to which the rate of perceiving BOOKING.COM as a brand exceeds this 'noise' level."[8]

---

[7] Poret Report p. 8 (B-000008).
[8] Poret Report p. 14 (B000014).

8

Mr. Poret's report also states that "STAPLES.COM was included in the examples of brands as an illustration of a DOT-COM term that is a trademark" and "OFFICESUPPLIES.COM was included as an example of a common term to illustrate that not all DOT-COM terms are brand names and that a term that takes a generic term such as OFFICE SUPPLIES and adds '.com' can be a generic term. Since STAPLES.COM (as a brand) and OFFICESUPPLIES.COM (as a generic term) were both included in the examples, the survey neither gave emphasis to 'brand' or 'common' in the case of DOT-COM terms."[9]

According to Mr. Poret's report, there were four separate rotations that varied the order in which terms were presented to respondents. Any given respondent received one of these rotations; in other words, the 400 total respondents were divided into 100 per rotation. The order in which terms were presented in the four rotations is shown in the following table, with the first term presented on top and the last term presented on bottom.[10]

| TABLE 1 | | | |
|---|---|---|---|
| **Rotation 1** | **Rotation 2** | **Rotation 3** | **Rotation 4** |
| BOOKING.COM | WASHINGMACHINE.COM | SPORTING GOODS | WASHINGMACHINE.COM |
| SPORTING GOODS | SHUTTERFLY | ETRADE.COM | SHUTTERFLY |
| ETRADE.COM | BOOKING.COM | PEPSI | SUPERMARKET |
| PEPSI | SPORTING GOODS | SUPERMARKET | SPORTING GOODS |
| SHUTTERFLY | PEPSI | BOOKING.COM | ETRADE.COM |
| WASHINGMACHINE.COM | ETRADE.COM | SHUTTERFLY | PEPSI |
| SUPERMARKET | SUPERMARKET | WASHINGMACHINE.COM | BOOKING.COM |

---

[9] Poret Report p. 9, 10 (B-000009, B-000010).
[10] Poret Report p. 13-14 (B-000013 – B-000014).

Regarding the DOT-COM terms, it may be seen that WASHINGMACHINE.COM is presented before BOOKING.COM and ETRADE.COM in Rotations 2 and 4, and after both of those terms in Rotations 1 and 3.

It also may be seen that BOOKING.COM is presented after ETRADE.COM and before WASHINGMACHINE.COM in Rotation 3 (that is, after the brand name and before the common name), after WASHINGMACHINE.COM and before ETRADE.COM in Rotation 2 (that is, after the common name and before the brand name), after both other terms in Rotation 4, and before both other terms in Rotation 1.

Overall results of the survey, as reported by Mr. Poret, are as follows:[11]

| TABLE 2 | |
|---|---|
| | Percentage of respondents who said this term is a brand name, given response options of brand name, common name, or don't know |
| BOOKING.COM | 74.8% |
| PEPSI | 99.3% |
| ETRADE.COM | 96.8% |
| SHUTTERFLY | 96.8% |
| SPORTING GOODS | 0.5% |
| WASHINGMACHINE.COM | 33.0%[12] |
| SUPERMARKET | 0.0% |

[11] Poret Report p. 28, 29 (B-000028, B-000029).
[12] This is erroneously listed as 30% on Poret Report p. 17 (B-000017). Correspondingly, Poret Report p. 18 (B-000018) lists the difference between BOOKING.COM and WASHINGMACHINE.COM as "nearly 45%" rather than the actual 41.8%.

## Comments on the Poret Survey

In my opinion, the following factors are relevant to the results obtained or the proper interpretation of the Poret Survey regarding the extent to which BOOKING.COM is perceived to be a brand name or a common name.

*The Population Surveyed Is Under-inclusive*

The Poret Survey is restricted to "consumers who search for or make hotel or travel arrangements online." However, none of the trademark applications at issue are limited to services provided online.

Application Serial Nos. 79122365 and 79122366 are for "Hotel reservation services for others; holiday accommodation reservation services and resort reservation services, namely, providing hotel room reservation services and resort hotel reservation services and providing online hotel and resort hotel room reservation services; providing information about hotels, hotel accommodations and resorts accommodations, whether or not based on the valuation of customers; information, advice and consultancy relating to the aforesaid services; the aforesaid services <u>also provided electronically</u>," in International Class 43.[13]

Application Serial No. 85485097 is for "Travel agency services, namely, making reservations for transportation; travel and tour ticket reservation services; travel agency services, namely, making reservations for transportation for tourists; provision of travel information; providing consultation related to making reservations for transportation, and travel and tour ticket reservation; <u>all of the foregoing services rendered in-person and via the internet</u>," in International Class 39. Also, "Making hotel reservations for others <u>in person and via the internet</u>; providing personalized information about hotels and temporary accommodations for travel <u>in-</u>

---

[13] From Application Serial Nos. 79122365 (A1890) and 79122366 (A2898); underlining added for emphasis

person and via the Internet; providing on-line reviews of hotels; consultation services related to making hotel reservations for others, provision of personalized information about hotels and temporary accommodations for travel, and on-line reviews of hotels," in International Class 43.[14]

Application Serial No. 79114998 is for "Arranging of tours and arranging of tours online; reservation and sale of travel tickets and online reservation and sale of travel tickets; information, advice and consultancy regarding the arranging of tours and the reservation and sale of travel tickets; provision of information relating to travel and travel destinations; travel and tour agency services, namely, travel and tour ticket reservation services; travel agency services; tourist agency services; providing online travel and tourism services, namely, providing online travel and tour ticket reservation services, online travel agency services, online tourist agency services and providing online information relating to travel and travel destinations," in International Class 39. Also, "Making hotel reservations for others; holiday accommodation reservation services and resort reservation services, namely, providing hotel room reservation services and resort hotel reservation services and providing online hotel and resort hotel room reservation services; providing information about hotels, holiday accommodations and resorts accommodations, whether or not based on the valuation of customers; providing information, advice and consultancy relating making hotel reservations and temporary accommodation reservations; providing online information, advice and consultancy relating making hotel reservations and temporary accommodation reservations," in International Class 43.[15]

If the applications are not limited to services provided online, then the relevant population includes consumers who search for or make hotel or travel arrangements other than

---

[14] From Application Serial No. 85485097 (A3565); underlining added for emphasis
[15] From Application Serial No. 79114998 (A670); underlining added for emphasis

online, and the restriction to "consumers who search for or make hotel or travel arrangements online" makes the Poret Survey under-inclusive.

This is relevant to the results because consumers who do not use online services may be less aware of BOOKING.COM, and hence the percentage of respondents who said that BOOKING.COM is a brand name (given response options of brand name, common name, or don't know) may have been lower if the survey included all relevant consumers.

*Respondents were not effectively educated or tested regarding the distinction between DOT-COM brand names and common names*

The Poret Survey educated respondents on the distinction between brand names and common names by providing the following information.

"Brand names are names that companies use to identify who a product or service comes from. Brands names primarily let the consumer know that a product or service comes from a specific company.

For example, TOYOTA, CHASE, and STAPLES.COM are all brand names. These terms primarily identify for a consumer who a product or service comes from."

And:

"Common names are words used to identify a type of product or service – in other words, what the product or service is, not who makes it. Common names primarily let the consumers know what type of product or service is being offered.

For example, unlike the brand names TOYOTA, CHASE, and STAPLES.COM; AUTOMOBILE, BANK, AND OFFICESUPPLIES.COM are all common names. These terms primarily identify for the consumer what type of product or service a company is selling, rather than who the product or service comes from."

The survey then tested respondents' ability to make this distinction by asking:

"Which type of name would you say KELLOGG is?"

And:

"Which type of name would you say CEREAL is?"

Respondents who correctly answered that KELLOGG is a brand name and that CEREAL is a common name continued with the survey. Respondents who did not correctly answer both these questions were excluded from the survey.

Procedurally, then, the information that was provided to educate respondents on the distinction between brand names and common names did not focus on DOT-COM terms and did not explain the difference between brand names and common names in a DOT-COM context. Also, respondents were not tested on their ability to distinguish a DOT-COM brand name from a DOT-COM common name.

The survey results indicate that these procedures did not effectively educate or test respondents regarding the distinction between DOT-COM brand names and common names. The results show that one-third of the respondents, 33.0%, incorrectly identified WASHINGMACHINE.COM, the DOT-COM common name used in the survey, as a brand name. This compares with 0.5% and 0.0% for SPORTING GOODS and SUPERMARKET respectively, the non-DOT-COM common names. It appears that there was some tendency for respondents to think that any DOT-COM name is a brand.[16]

Mr. Poret's report suggests that this effect can be controlled by comparing the results for BOOKING.COM to the results for WASHINGMACHING.COM. The report states that "The inclusion of WASHINGMACHINE.COM in particular allows us to assess the extent to which respondents will identify a generic term as a brand when '.com' is added to the end, and to assess

---

[16] In fact, in the pooled data for Rotations 1 and 3, where WASHINGMACHINE.COM was presented after the other DOT-COM terms, the number of respondents who incorrectly said this term is a brand name was larger than the number who said it is a common name. Of 200 respondents in Rotations 1 and 3, 48% chose the "brand name" response option for WASHINGMACHINE.COM, 44% chose "common name," and 8% chose "don't know." In Rotation 3 specifically, 58% incorrectly chose "brand name," 34% chose "common name," and 8% chose "don't know."

14

the extent to which the rate of perceiving BOOKING.COM as a brand exceeds this 'noise'
level."[17]

Two points are in order. First, if this argument is accepted, the extent to which the rate of
perceiving BOOKING.COM as a brand exceeds this "noise" level is 41.8%, or less than 50%.

Second, if respondents have not been effectively educated or tested regarding the
distinction between DOT-COM brand names and common names, and to some extent are
guessing whether any given DOT-COM term is a brand name, the effect may not be fully
controlled by subtracting the results for WASHINGMACHINE.COM from the results for
BOOKING.COM. The difference in results for these two terms may not only be attributable to
recognition of BOOKING.COM as a brand name, but also to other factors such as the possibility
that a washing machine is a more common object, or that the WASHINGMACHINE.COM term
is more similar than BOOKING.COM to the OFFICESUPPLIES.COM example that respondents
were told was a common name.

*Respondents appear to be answering based on context and inference rather than actual
knowledge*

A comparison of results across the four rotations shows significant "response order"
effects in the results for WASHINGMACHINE.COM and BOOKING.COM. These response
order effects reinforce the idea that respondents were not effectively educated or tested regarding
the distinction between DOT-COM brand names and common names, and indicate that
respondents appear to be answering based on context and inference rather than actual knowledge.

---

[17] Poret Report p. 14 (B-000014).

The following table shows, for each term used in the Poret Survey, the percentage of respondents (of 100 in in each rotation) who said the term is a brand name, given response options of brand name, common name, or don't know.

| TABLE 3 | | | | |
|---|---|---|---|---|
| **Percentage of respondents (of 100 in each rotation) who said this term is a brand name, given response options of brand name, common name, or don't know** | | | | |
| | Rotation 1 | Rotation 2 | Rotation 3 | Rotation 4 |
| *BOOKING.COM* | *74%* | *53%* | *94%* | *78%* |
| PEPSI | 99% | 100% | 98% | 100% |
| ETRADE.COM | 95% | 94% | 99% | 99% |
| SHUTTERFLY | 92% | 100% | 99% | 97% |
| SPORTING GOODS | 0% | 0% | 1% | 1% |
| *WASHINGMACHINE.COM* | *38%* | *19%* | *58%* | *17%* |
| SUPERMARKET | 0% | 0% | 0% | 0% |

As may be seen in the table, there are significant differences in results for BOOKING.COM and WASHINGMACHINE.COM across the four rotations; that is, across the four orders in which terms were presented.

Overall, 33.0% (132/400[18]) of respondents said that WASHINGMACHINE.COM is a brand name. However, the results depend on whether WASHINGMACHINE.COM was presented before or after BOOKING.COM and ETRADE.COM. In Rotations 2 and 4, where WASHINGMACHINE.COM was presented <u>before</u> those other terms (and in closer proximity to the OFFICESUPPLIES.COM example), 18.0% (36/200) of respondents said that WASHINGMACHINE.COM is a brand name. This compares with 48.0% (96/200) in Rotations

---

[18] 38 of 100 in Rotation 1 plus 19 of 100 in Rotation 2 plus 58 of 100 in Rotation 3 plus 17 of 100 in Rotation 4 equals a total of 132 of 400 across all rotations.

1 and 3, where WASHINGMACHINE.COM was presented <u>after</u> those other terms. The comparison is shown in the following table.

| TABLE 4 | |
|---|---|
| **WASHINGMACHINE.COM** | **Percentage of respondents that said this term is a brand name** |
| When presented before ETRADE.COM and BOOKING.COM | 18.0% |
| When presented after ETRADE.COM and BOOKING.COM | 48.0% |

Results for BOOKING.COM also depended on presentation order. Overall, 74.8% (299/400) of respondents identified BOOKING.COM as a brand name. However, in Rotation 2, where BOOKING.COM was presented after WASHINGMACHINE.COM and before ETRADE.COM (that is, after the common name and before the brand name), 53.0% (53/100) of respondents identified BOOKING.COM as a brand name. This compares with 94.0% (94/100) in Rotation 3, where BOOKING.COM was presented after ETRADE.COM and before WASHINGMACHINE.COM (that is, after the brand name and before the common name).  The comparison is shown in the following table.

| TABLE 5 | |
|---|---|
| **BOOKING.COM** | **Percentage of respondents that said this term is a brand name** |
| When presented after WASHINGMACHINE.COM and before ETRADE.COM | 53.0% |
| When presented after ETRADE.COM and before WASHINGMACHINE.COM | 94.0% |

It is apparent that order of presentation made a significant difference in the results for these terms. These response order effects reinforce the idea that respondents were not effectively educated or tested regarding the distinction between DOT-COM brand names and common names, and indicate that respondents appear to be answering based on context and inference rather than actual knowledge.

*Summary*

To summarize, in my opinion, the following factors are relevant to the results obtained or the proper interpretation of the Poret Survey regarding the extent to which BOOKING.COM is perceived to be a brand name or a common name.

- First, the population surveyed is under-inclusive. The Poret Survey is restricted to "consumers who search for or make hotel or travel arrangements online." However, none of the trademark applications at issue are limited to services provided online, and thus the relevant population includes consumers who search for or make hotel or travel arrangements other than online. The restriction of respondents to those "who search for or make hotel or travel arrangements online" makes the Poret Survey under-inclusive. This is relevant to the results because consumers who do not use online services may be less aware of BOOKING.COM, and hence the percentage of respondents who said that BOOKING.COM is a brand name (given response options of brand name, common name, or don't know) may have been lower if the survey included all relevant consumers.

- Second, the Poret Survey did not effectively educate or test respondents regarding the distinction between DOT-COM brand names and common names. It appears that there was some tendency for respondents to think that any DOT-COM name is a brand.

- Third, the order in which DOT-COM terms were presented to respondents made a significant difference in the results. These response order effects reinforce the idea that respondents were not effectively educated or tested regarding the distinction between DOT-COM brand names and common names, and indicate that respondents appear to be answering based on context and inference rather than actual knowledge.

I reserve the right to supplement this report based on further review of the data or any additional arguments or facts that may be presented to me.

**Signature**

(SIGNED)_____        (DATE)__10/13/16__

# APPENDIX 1

# BLAIR C.V.

**VITAE**
**Edward A. Blair**


**Office**:     Department of Marketing & Entrepreneurship
               385 Melcher Hall
               University of Houston
               Houston, Texas  77204-6021
               Phone: 713-743-4565
               Fax: 713-743-4572
               e-mail: blair@uh.edu


## Education

        B.S. (with High Honors), University of Illinois, 1973
        Major Field: Business Administration
        Minor Field: English Literature

        Ph.D., University of Illinois, 1978
        Major Field: Business Administration
        Minor Field: Statistics


## Academic Positions

        2005 -      Michael J. Cemo Professor and Chair, Department of Marketing &
                    Entrepreneurship, University of Houston

        1996 -      Chair, Department of Marketing & Entrepreneurship, University of Houston

        1995-96     Visiting Professor, Rice University

        1993 -      Professor, Department of Marketing & Entrepreneurship, University of
                    Houston

        1991        Visiting Associate Professor, Madrid Business School (Madrid, Spain)

        1988        Visiting Associate Professor, Rice University

        1982-93     Associate Professor, Department of Marketing, University of Houston

        1977-82     Assistant Professor, Department of Marketing, University of Houston

Vitae, E. A. Blair                              2

## Research and Publications

Publications - Books

> N. Bradburn and S. Sudman with E. Blair, W. Locander, C. Miles, E. Singer and C. Stocking, Improving Interview Method and Questionnaire Design, San Francisco, CA: Jossey-Bass, 1979

> K. Cox and E. Blair (eds.), Marketing in Action, Englewood Cliffs, NJ: Prentice-Hall, 1989.

> E. Blair and W. Kamakura (eds.), Marketing Theory and Applications: Proceedings of the 1996 AMA Winter Educators' Conference, Chicago, IL: American Marketing Association, 1996.

> S. Sudman and E. Blair, Marketing Research, Burr Ridge, IL: Irwin/McGraw-Hill, 1997.

> J. Blair, R. Czaja and E. Blair, Designing Surveys: A Guide to Decisions and Procedures (3rd Edition), Thousand Oaks, CA: SAGE Publications, 2013

> E. Blair and J. Blair, Applied Survey Sampling, Thousand Oaks, CA: SAGE Publications (2015)

Publications - Journal Papers

> E. Blair, "Marketing as Exchange: A Comment" Journal of Marketing, January 1977.

> E. Blair, S. Sudman, N. Bradburn and C. Stocking, "How to Ask Questions About Drinking and Sex" Journal of Marketing Research, August 1977.

> -- Adapted as Chapter 2 in N. Bradburn et al., Improving Interview Method and Questionnaire Design, San Francisco: Jossey-Bass, 1979.

> -- Reprinted in R. Ferber (ed.) Readings in Survey Research, Chicago: American Marketing Assn., 1979.

> -- Reprinted in N. Fielding (ed.) Interviewing (Sage Benchmarks in Social Research Methods), London: Sage Publications Ltd., 2002.

> -- Reprinted in M. Bulmer (ed.), Questionnaires (Sage Benchmarks in Social Research Methods), London: Sage Publications Ltd., 2003.

> -- Earlier draft presented at American Marketing Association Educators' Conference, 1976.

> S. Sudman, N. Bradburn, E. Blair and C. Stocking, "Estimates of Threatening Behavior Based on Reports of Friends" Public Opinion Quarterly, Summer 1977.

Vitae, E. A. Blair                              3

--      Adapted as Chapter 9 in N. Bradburn et al., <u>Improving Interview Method and Questionnaire Design</u> San Francisco: Jossey-Bass, 1979.

S. Sudman, E. Blair, N. Bradburn and C. Stocking, "Modest Expectations:  The Effects of Interviewers' Prior Expectations on Responses" <u>Sociological Methods and Research</u>, November 1977.

--      Adapted as Chapter 4 in N. Bradburn et al., <u>Improving Interview Method and Questionnaire Design</u>, San Francisco: Jossey-Bass, 1979.

--      Reprinted in D. Alwin (ed.) <u>Survey Design and Analyses: Current Issues</u>, Beverly Hills: Sage Publications, 1978.

E. Blair, "More on the Effects of Interviewers' Voice Intonations" <u>Public Opinion Quarterly</u>, Winter 1977.

N. Bradburn, S. Sudman, E. Blair and C. Stocking, "Question Threat and Response Bias" <u>Public Opinion Quarterly</u>, Summer 1978.

--      Adapted as Chapter 5 in N. Bradburn et al., <u>Improving Interview Method and Questionnaire Design</u>, San Francisco: Jossey-Bass, 1979.

--      Reprinted in E. Singer and S. Presser (eds.), <u>Survey Research Methods</u>, Chicago: University of Chicago Press, 1989.

--      Reprinted in M. Bulmer (ed.), <u>Questionnaires</u> (Sage Benchmarks in Social Research Methods), London: Sage Publications Ltd., 2003.

E. Blair, "Using Practice Interviews to Predict Interviewer Behaviors" <u>Public Opinion Quarterly</u>, Summer 1980.

E. Blair and E. Laird Landon, "The Effects of Reference Prices in Retail Advertisements" <u>Journal of Marketing</u>, Spring 1981.

E. Blair, "When Four Months Equal a Year: A Comment" <u>Public Opinion Quarterly</u>, Summer 1982.

E. Blair, "Sampling Issues in Trade Area Maps Drawn from Shopper Surveys" <u>Journal of Marketing</u>, Winter 1983.

G. Zinkhan and E. Blair, "An Assessment of the Cloze Procedure as an Advertising Copy Test" <u>Journalism Quarterly</u>, Summer 1984.

E. Blair and S. Burton, "Cognitive Processes Used by Survey Respondents to Answer Behavioral Frequency Questions" <u>Journal of Consumer Research</u>, September 1987.

Vitae, E. A. Blair                                    4

--      Portions presented earlier in "Processes Used in the Formulation of Behavioral
        Frequency Reports in Surveys," American Statistical Association Conference, 1986.

E. Blair and S. Burton, "Response Frame Effects in Most Important Attribute Data" <u>Applied
Marketing Research</u>, Spring 1988.

--      Earlier draft presented at American Association for Public Opinion Research
        Conference, 1987.

E. Blair and G. Ganesh, "Characteristics of Interval-Based Estimates of Autobiographical
Frequencies" <u>Applied Cognitive Psychology</u>, May-June 1991.

S. Burton and E. Blair, "Task Conditions, Response Formulation Processes, and Response
Accuracy for Behavioral Frequency Questions in Surveys" <u>Public Opinion Quarterly</u>, Spring
1991.

A. Biswas and E. Blair, "Contextual Effects of Reference Prices in Retail Advertisements"
<u>Journal of Marketing</u>, July 1991.

S. Sudman and E. Blair, "Sampling in the 21st Century" <u>Journal of the Academy of
Marketing Science</u>, Spring 1999.

--      Reprinted in D. de Vaus (ed.) <u>Social Surveys</u> (Sage Benchmarks in Social Research
        Methods), London: Sage Publications Ltd., 2002.

--      Reprinted in N. Malhotra (ed.) <u>Fundamentals of Marketing Research</u> (Sage Library in
        Marketing), London: Sage Publications Ltd., 2007.

G. Oakenfull, E. Blair, B. Gelb and P. Dacin, "Measuring Brand Meaning" <u>Journal of
Advertising Research</u>, September-October, 2000.

K. Smith, E. Jones and E. Blair, "Managing Salesperson Motivation in a Territory
Realignment," <u>Journal of Personal Selling and Sales Management</u>, Fall, 2000.

P. Krishnamurthy, P. Carter and E. Blair, "Attribute Framing and Goal Framing Effects in
Health Decisions," <u>Organizational Behavior and Human Decision Processes</u>, July, 2001.

A. Baldinger, E. Blair and R. Echambadi, "Why Brands Grow," <u>Journal of Advertising
Research</u>, January-February, 2002.

E. Blair, J. Harris and K. Monroe, "Effects of Shopping Information on Consumers'
Responses to Comparative Price Claims," <u>Journal of Retailing</u>, Fall, 2002.

J. Harris and E. Blair, "Effects of Functional Risk Salience on Consumers' Preference for
Product Bundles," <u>Journal of the Academy of Marketing Science</u>, January, 2006.

Vitae, E. A. Blair                                    5

E. Blair and G. Zinkhan, "Nonresponse and Generalizability in Academic Research," Journal of the Academy of Marketing Science, January, 2006.

E. Blair and J. Blair, "Dual Frame Web-Telephone Sampling for Rare Groups," Journal of Official Statistics, June, 2006.

J. Harris and E. Blair, "Consumer Preference for Product Bundles: The Role of Reduced Search Costs," Journal of the Academy of Marketing Science, October, 2006.

B. Wansink, G. Cordua, E. Blair, C. Payne and S. Geiger, "Wine Promotions in Restaurants: Do Beverage Sales Contribute or Cannibalize," Cornell Hotel and Restaurant Administration Quarterly, November, 2006.

K. Aboulnasr, O. Narasimhan, E. Blair and R. Chandy, "Competitive Response to Radical Innovations," Journal of Marketing, May, 2008.

J. Noriega and E. Blair, "Advertising to Bilinguals: Does the Language of Advertising Influence the Nature of Thoughts?" Journal of Marketing, September, 2008.

J. Harris and E. Blair, "Consumer Processing of Bundled Prices: When Do Discounts Matter" Journal of Product & Brand Management, 2012.

R. Echambadi, R. Jindal and E. Blair, "Evaluating and Managing Brand Repurchase across Multiple Geographic Retail Markets," Journal of Retailing, 2013.

Publications - Chapters in Books (not cited above)

"Interviewer Variations in Asking Questions" Chapter 3 in N. Bradburn et al., Improving Interview Method and Questionnaire Design, San Francisco:  Jossey-Bass, 1979.

--      Portions presented earlier in "Occurrence and Recognition of Non-Programmed Interviewer Speech Behaviors," American Marketing Association Educators' Conference, 1978.

--      Other portions presented earlier in "Testing Interviewer Effects on Survey Data," American Association for Public Opinion Research Conference, 1979.

"Interviewing in the Presence of Others" Chapter 8 in N. Bradburn et al., Improving Interview Method and Questionnaire Design, San Francisco:  Jossey-Bass, 1979.

"On Providing Population Data to Improve Respondents' Estimates of Autobiographical Frequencies" (with K. Williamson) in N. Schwarz and S. Sudman, Autobiographical Memory and the Validity of Retrospective Reports, New York: Springer-Verlag, 1994.

--      Previous draft presented at American Statistical Association Conference, 1990.

Vitae, E. A. Blair                                        6

"Managerial Implications of Kent Monroe's Research on Comparative Price Advertising" in Jagdish Sheth (ed.), Legends of Marketing: Kent Monroe, New Delhi: Sage Pvt. Ltd., 2011.

Publications - Conference Papers (not cited above)

"Wroe Alderson and Modern Marketing Theory" (with K. Uhl), American Marketing Association Marketing Theory Conference, August, 1977.

"Response Effects in Threatening Questions" (with S. Sudman), American Psychological Association Conference, Division 23, August, 1977.

"Alternative Measures of Frequency Bias in Shopper Surveys" (with S. Calcich), American Marketing Association Educators' Conference, August, 1980.

"Questionnaire Design Manipulations and Response Rates to a Mail Consumer Finances Survey" (with V. Veth and E. L. Landon, Jr.), American Marketing Association Educators' Conference, August, 1982.

"The Perceptual Task in Acquisition of Package Information" (with S. Calcich), Association for Consumer Research Conference, October, 1982.

"Some Effects of Requesting Active Commitment from Survey Respondents" (with V. Veth and E. L. Landon, Jr.), American Association for Public Opinion Research Conference, May, 1983.

"Commitment Requests and Response Rates in Three Mail Surveys" (with G. Ganesh), American Marketing Association Educators' Conference, August, 1984.

"The Realist View of Science:  Implications for Marketing" (with G. Zinkhan), American Marketing Association Theory Conference, October, 1984.

"Cognitive Processes Used to Answer Expenditure Questions" (with S. Burton and D. Lichtenstein), American Statistical Association Conference, August, 1988.

"On Estimating Distributional Characteristics from Categorized Data" (with L. R. LaMotte), American Statistical Association Conference, August, 1988.

"Yielding to Temptation Due to Depletion: Can Mental Budgets Help?" (with S. Prokopec and P. Krishnamurthy), Society for Consumer Psychology, February, 2009.

"Post-Choice Effects of Pre-Choice Uncertainty: Influences of Uncertainty on Satisfaction and Repurchase" (with D. Andrews), Society for Consumer Psychology, February, 2010.

"Investigating New Product Purchase Behavior: A Multi-Product Individual-Level Model for New Product Sales" (with C. Liutec and R. Du), INFORMS Marketing Science, June, 2012

Vitae, E. A. Blair                                    7

Publications - Book Reviews

The Recall Method in Social Surveys by L. Moss and H. Goldstein; Journal of Marketing Research, May 1980

Question Framing and Response Consistency by R. Hogarth; Journal of Marketing Research, November 1982.

The Research Interview: Uses and Approaches by M. Brenner, J. Brown and D. Canter; Journal of Marketing Research, May 1986.

How Many Subjects? by H Kraemer and S. Thiemann; Journal of Marketing Research, May 1989.

An Experimental Comparison of Telephone and Personal Health Interview Surveys by O. Thornberry (National Center for Health Statistics monograph, Series 2, No. 106); Public Opinion Quarterly, Spring 1989.

Randomized Response: Theory and Techniques by A. Chaudhuri and R. Mukerjee; Journal of Marketing Research, November 1989.


**Teaching**

Academic Courses Taught

| | |
|---|---|
| Principles of Marketing | (Undergraduate) |
| Marketing Research | (Undergraduate) |
| Retailing Management | (Undergraduate) |
| Overview of Entrepreneurship | (Undergraduate) |
| Entrepreneurial Costs & Budgeting | (Undergraduate) |
| Entrepreneurial Revenues | (Undergraduate) |
| Entrepreneurial Capital | (Undergraduate) |
| Marketing Management | (Masters) |
| Marketing Research | (Masters) |
| Entrepreneurship/Venture Planning | (Masters) |
| Business Consulting Lab | (Masters) |
| Statistics | (Masters) |
| Marketing Theory | (Doctoral) |
| Marketing Research Methods | (Doctoral) |
| Multivariate Analysis | (Doctoral) |
| Sampling Methods | (Doctoral) |
| Applied Survey Research | (Doctoral) |

Vitae, E. A. Blair                                    8

Professional Programs Taught

>   Lecturer on Sampling at the American Marketing Association's School of Marketing
>   Research from its inception in 1980 to 1999; also taught Survey Methods and Conjoint
>   Analysis in this program

>   Lecturer on Survey Methods at the American Marketing Association's Advanced Research
>   Techniques Forum (ARTF)

>   Lecturer on Marketing, Marketing Research, and New Product Development in numerous
>   programs at the University of Houston Center for Executive Development

Other Teaching Details

>   As lecturer in continuing education programs, have taught sampling and survey design to
>   more than 1,000 marketing research professionals. Companies represented include Coca-
>   Cola, Procter & Gamble, Union Pacific, Sears, General Electric, Union Carbide, Dow
>   Chemical, Gerber Products, Federal Express, AT&T, Hallmark Cards and many others.

>   Taught the first Entrepreneurship course offered at UH and was a founding instructor in the
>   current Entrepreneurship program.  Have directed the preparation of more than 150 business
>   plans and have seen more than 30 former students start businesses.


**Administration and Service**

Administrative and service activities include:

>   Chair, UH Department of Marketing & Entrepreneurship, 1996-present

>   Member, Journal of Consumer Research Policy Board, 2013-present

>   --      Vice-President, JCR Policy Board, 2016

>   Member, American Statistical Association Committee on Energy Statistics (advisory to U.S.
>       Energy Information Administration), 2007-2012

>   --      Chair, ASA Committee on Energy Statistics, 2009-2012

>   Member, US Census Bureau Advisory Committee, 2002-2007

>   Editorial Board member:   Journal of Marketing Research, 1991-2003
>                             Journal of the Academy of Marketing Science, 2003-2007
>                             Journal of Business Research, 1991-2014

Vitae, E. A. Blair                                     9

Ad hoc reviewer: <u>Journal of Marketing</u>, <u>Journal of Consumer Research</u>, <u>Public Opinion Quarterly</u>, various other journals.

National Science Foundation panelist, Innovation and Organizational Change program, 2004-05

National Conference Chair, American Marketing Association Educators' Conference, 1996

Doctoral Program Coordinator, UH Marketing Department, 1983-1988

Created the UH Doctoral Symposium, 1982

Have served on various university, college, department, and civic committees.

## Consulting Experience

Have served as a business consultant to various organizations, primarily with respect to market research procedures, new product development, and retail operations.

Have served as a consultant or expert witness in various commercial lawsuits, primarily with respect to intellectual property issues and/or economic damages.

# APPENDIX 2

# BLAIR LIST OF LAWSUITS

Lawsuits in which Edward A. Blair has testified in recent years:

*Rosetta Stone, Ltd. v. Google, Inc.*, No. 1:09-cv-00736-GBL-TRJ (E.D. Va.)

*Mattel, Inc. v. MGA Entertainment, Inc.*, Civ. No. 04-cv-9049 (C.D. Cal.)

*Teri Heggelund et al. v. Schlumberger Technology Corporation*, No. 50-198-T-000548-

10 (AAA)

*Anheuser-Busch Incorporated v. Innvopak Systems Pty Ltd*, Opp. No. 91194148
(TTAB)

*Eolas Technologies Incorporated v. Adobe Systems, Inc. et al.*, No. 6:09-cv-00446-LED
(E.D. Tex.)

*3M Company v. Professional Gallery, Inc.*, Opp. No. 91173411 (TTAB)

*Autodesk, Inc. v. Michelle K. Lee*, No. 1:13-cv-1464 (E.D. Va.)

*Invensys Systems, Inc. v. Emerson Electric Co. and Micro Motion, Inc.*, No. 6:12-cv-
00799 (E.D. Tex.)