IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BOOKING.COM B.V.,

Plaintiff,

v.

1:16-cv-425 (LMB/IDD)

JOSEPH MATAL,
Performing the Function and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, et al.,

Defendants.

MEMORANDUM OPINION

This case involves plaintiff Booking.com B.V.'s ("Booking" or "plaintiff") appeals of the United States Patent and Trademark Office's ("USPTO" or "defendants") refusal to register four marks consisting of or containing the term BOOKING.COM,[1] which were affirmed by the Trademark Trial and Appeal Board ("TTAB") in three separate opinions. See Mem. Op. at 4-5 [Dkt. No. 87]. The parties submitted the issues on cross motions for summary judgment, which were partially granted in plaintiff's favor by an order directing the USPTO to register plaintiff's marks in the '998 and '097 Applications, and remanding the '365 and '366 Applications for further administrative proceedings consistent with the Memorandum Opinion [Dkt. No. 88]. That decision is at issue in defendants' Motion to Amend Judgment [Dkt. No. 94] and defendants' Motion for Expenses Pursuant to 15 U.S.C. § 1071(b)(3) [Dkt. No. 98] which are before the

[1] The four trademark applications at issue were Serial No. 85485097 (the "'097 Application"); Serial No. 79114998 (the "'998 Application"); Serial No. 79122365 (the "'365 Application"); and Serial No. 79122366 (the "'366 Application").

Court. The motions have been fully briefed. Finding that oral argument will not assist the decisional process, the motions will be resolved on the materials submitted.

## I. DISCUSSION

### A. Defendants' Motion to Amend Judgment

#### 1) Standard of Review

Motions to alter or amend final judgments under Fed. R. Civ. P. 59(e) are discretionary and "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Robinson v. Wix Filtration Corp., 599 F.3d 403, 411 (4th Cir. 2010). Reconsideration "is an extraordinary remedy that should be applied sparingly." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012). "[M]ere disagreement does not support a Rule 59(e) motion." United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (quoting Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993)).

#### 2) Analysis

The USPTO seeks a modification to the Order issued on August 9, 2017 [Dkt. No. 88], which required the USPTO to "register plaintiff's marks in the '998 Application and '097 Application as to the Class 43 services." It argues that the Court does not have authority to direct the USPTO to register a trademark because that duty is imposed on the Director of the USPTO by statute. See Def.'s Mot. to Amend at 3 (citing Gould v. Quigg, 822 F.2d 1074, 1079 (Fed. Cir. 1987)). Further, it points out that the USPTO cannot statutorily register a mark without publishing the application for opposition, under 15 U.S.C. § 1062(a). Id. It requests that that the Court alter its judgment to remand the '998 and '097 Applications to the USPTO for "further

administrative proceedings consistent with the findings and conclusions of the Court's memorandum opinion." Id.

Booking agrees that the Court cannot order the USPTO to register the mark, but responds that there are no further "administrative proceedings," and the only course of conduct open to the USPTO is to publish the marks for opposition. Pl.'s Partial Opp. to Mot. Amend at 2 [Dkt. No. 97]. Booking argues that because the Court addressed all issues of fact and law with respect to the two Applications, there is nothing left for the agency to consider and it must follow its statutory mandate to publish the marks for opposition. Id. at 2-3.

Booking has the better argument. Under 15 U.S.C. § 1062(a), once an examiner determines that a trademark application appears to be entitled to registration, "the Director shall cause the mark to be published in the Official Gazette of the Patent and Trademark Office." 15 U.S.C. § 1062(a) (emphasis added). Moreover, the USPTO's Trademark Manual of Examining Procedure ("TMEP") § 1708, provides that "[t]he Director has no authority to waive or suspend the requirement of a rule that is also a requirement of the statute." TMEP § 1708. The clear statutory requirement, based on this Court's determination that the '998 and '097 Applications are entitled to protection is to move forward and publish the marks for opposition.

This view as to the appropriate procedure is supported by the Federal Circuit's decision in In re Wella A.G., 858 F.2d 725 (Fed. Cir. 1988). In that case, the Federal Circuit reversed the refusal of the TTAB to register a trademark because the court found that the TTAB had misinterpreted § 2(d) of the Trademark Act and held that "the only issue for the [TTAB] to consider on the remand is whether, considering all the circumstances, there is a likelihood of confusion between the mark sought to be registered and the four Wella U.S. marks which under section 2(d) would warrant refusal of registration." Id. at 726. After the case was remanded, the TTAB denied registration on a new and separate ground that the applicant was not the owner of

the mark, based on "additional views" of another judge appended to the opinion. Id. at 727. The applicant appealed again, and the court held that in refusing the mark on a new ground that had not been raised in the prior administrative proceeding or in the first appeal, the TTAB failed to carry out the court's instructions. Id. at 728.

In this case, the Court has gone further than the Federal Circuit did by determining that both the '998 and '097 Applications are eligible for protection under the Trademark Act. See Mem. Op. at 50; see also Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 155 (4th Cir. 2014) (finding that in de novo review of USPTO decisions, the district court acts as trier of fact). Given those conclusions, the USPTO may not reconsider the factual findings or try to determine new grounds to refuse registration of the marks, but must proceed with the next statutory step in the registration process by publishing the two marks for opposition. 15 U.S.C. § 1062(a).

The issues involved in the cases defendants cite for the proposition that the Court's authority is limited to remanding the Applications to the agency for further action consistent with the corrected legal standards are distinguishable. For example, in PPG Industries, Inc. v. United States, the D.C. Circuit explained that there is no principal of administrative law that restricts an agency from reopening proceedings to take new evidence after the grounds on which it relied are found to be invalid. 52 F.3d 363, 365 (D.C. Cir. 1995). The court held that the agency should be allowed to take new evidence to determine whether its jurisdictional decision was valid. Id. at 366. Here, there is no new evidence for the USPTO to take on the issue of eligibility for registration of the '998 or '097 Applications. As agreed by the parties, the Court resolved all factual disputes in making its ruling on summary judgment. See Mem. Op. at 6 & n.2 ("[I]n a civil action under § 1071(b), the district court reviews the record de novo and acts as the finder of fact.").

In certain situations, remand for further administrative action is appropriate, as when the agency in question is vested with discretion in its chosen course of conduct. See NLRB v. Food Store Emps. Union, Local 347, 417 U.S. 1, 10-11 (1974) (holding that remand is proper "when a reviewing court concludes that an agency invested with broad discretion to fashion remedies has apparently abused that discretion by omitting a remedy justified in the court's view by the factual circumstances"). See also FCC v. Pottsville Broadcasting Co., 309 U.S. 134 (1940), in which the plaintiff initially appealed the FCC's denial of its application to construct a broadcasting station. Id. at 139-40. The D.C. Circuit reversed the FCC's decision and remanded the matter back to the agency for further proceedings. Id. at 140. On remand, the FCC decided to hear argument on plaintiff's application along with argument on two other applications that had been filed after the plaintiff's to determine which, "on a comparative basis in the judgment of the Commission will best serve [sic] public interest." Id. Although the plaintiff objected that the FCC's conduct violated the remand and sought a writ of mandamus ordering the FCC to consider its application irrespective of the other two applications, the Supreme Court rejected this argument, holding that the only questions that had been determined in the original proceedings were legal questions and that the FCC was statutorily charged with "the duty of judging application[s] in the light of 'public convenience, interest, or necessity." Id. at 145. The Court held that it was improper for a court to make these decisions whereas the FCC was duty bound to enforce the legislative policy committed to its charge. Id. In contrast with the duty of the FCC in Pottsville Broadcasting, the only option available to the USPTO based on the findings of this Court is to publish the marks for opposition because all factual issues of eligibility have been resolved, and therefore the "legislative policy" of the USPTO is to publish the marks. See 15 U.S.C. § 1062(a).

Indeed, the USPTO has not identified any other proceeding or administrative procedure that it would need to undertake before publishing the marks. Its only argument is that the agency

still has discretion to determine the manner and timing of further proceedings. See Def.'s Reply at 3. Defendants argue that the agency still retains discretion to "determine the manner and timing" of its own proceedings, citing 37 C.F.R. § 2.67, which allows the USPTO to suspend its actions "for a reasonable time for good and sufficient cause." See Def.'s Mot. to Amend at 5. "The fact that a proceeding is pending before the Patent and Trademark Office or a court which is relevant to the issue of registrability of the applicant's mark ... will be considered prima facie good and sufficient cause." 37 C.F.R. § 2.67. The USPTO claims that it does not act on orders involving applications or registrations until the time for an appeal has elapsed, and that this constitutes sufficient cause for it to delay publication of the marks at issue. Def.'s Reply [Dkt. No. 101] at 3.

This argument is unpersuasive. The regulation only states that actual pendency of a proceeding before the Patent and Trademark Office constitutes sufficient cause. Until the USPTO or the Solicitor General chooses to file an appeal, there is no pending proceeding. The USPTO points to no authority which holds that the government's own internal deliberations constitute "proceedings" within the meaning of the regulation. Should the USPTO file an appeal to the Fourth Circuit, there would be a pending proceeding sufficient to justify delaying any action by the agency.

In its opposition, Booking argues that the judgment should be amended to order USPTO to publish all four Applications, including the '365 and '366 Applications, for opposition. This ignores the Court's findings with respect to those two separate Applications. Section 1062(a) only requires the USPTO to publish marks for opposition after the examiner has determined that it appears the mark is "entitled to registration, or would be entitled to registration upon the acceptance of the statement of use." Here, the Court did not find that the '365 and '366 Applications were entitled to registration. Instead, the Court specifically remanded those

Applications to the USPTO for administrative proceedings "to determine whether the design and color elements in those two applications, in combination with the protectable word mark, are eligible for protection as to the Class 43 services." See Mem. Op. at 50-51 & n.23.[2] There was no determination that these Applications should be registered. Because Booking offers no argument as to why the judgment with respect to the '365 or '366 Applications should be amended, the Court declines to amend the judgment in this manner.

Further, as the USPTO points out, if Booking's response is intended as a separate motion to amend the judgment under Rule 59(e), it is untimely. Rule 59(e) allows for a motion to amend to be filed no later than 28 days after the entry of the judgment; under Rule 6, this time may not be extended. The judgment was entered on August 9, 2017. [Dkt. No. 88]. Booking filed its response on September 13, 2017, which is over the 28 day time period to file such a motion. For these reasons, defendants' Motion to Amend Judgment [Dkt. No. 94] will be granted only as to amending the judgment to direct that the '998 and '097 Applications be immediately published in the Official Gazette of the Patent and Trademark Office and denied in all other respects.

**B. Motion for Expenses**

The USPTO has also moved for an order pursuant to 15 U.S.C. § 1071(b)(3) requiring Booking to pay $76,873.61, which reflects the USPTO's "expenses of the proceeding." Def.'s Mot. Expenses at 1-2.[3] The USPTO argues that these "reasonable expenses" include "the salaries of the PTO's attorney and paralegals attributed to the defense of the action," payments to expert witnesses, printing expenses, and travel expenses. Id. at 5. Section 1071(b)(3) provides that "all

---

[2] Both the '365 and '366 Applications include design elements that the TTAB concluded were "not in themselves, distinctive and that they therefore do not justify registration of the mark." A2122.

[3] This total amount consists of: $1,660.05 in court reporter and transcription expenses; $21,750.00 in expert fees; and $51,472.53 in attorney/paralegal fees.

the expenses of the proceeding shall be paid by the party bringing the case, whether the final decision is in favor of such party or not." The Fourth Circuit has interpreted this statute to include all of the reasonable expenses of the USPTO, including its personnel expenses, incurred during the litigation. See Shammas v. Focarino, 784 F.3d 219, 222-27 (4th Cir. 2015).

Booking objects to the motion, arguing that the motion for expenses violates the "American Rule;" that § 1071(b)(3) violates the First Amendment right of access to the courts; that the requested fees are not of this proceeding and are not reasonable; and that there is no basis to require it to pay the USPTO's expert witness fees. Pl.'s Opp. to Mot. Expenses at 2-4 [Dkt. No. 102].

**1. The American Rule**

Booking first argues that the term "expenses" as used in § 1071(b)(3) is not specific enough to warrant departure from the American Rule, which provides that "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53 (2010); In re Crescent City Estates, LLC, 588 F.3d 822, 825 (4th Cir. 2009).

Based on Fourth Circuit precedent, this argument fails. In Shammas v. Focarino, the Fourth Circuit examined a fee petition under § 1071(b)(3) and found that "in ordinary parlance, 'expenses' is sufficiently broad to include attorneys fees and paralegals fees," relying, in part, on definitions and explanations that standard legal dictionaries and treatises provide for the term "expense." 784 F.3d at 222. Those resources include Wright & Miller on Federal Practice and Procedure which defines "expenses" as "includ[ing] all the expenditures actually made by a litigant in connection with the action," including "attorney's fees." 10 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2666 (3d ed. 1998). Similarly, Black's Law Dictionary defines "expenses" as "expenditure[s] of money, time, labor, or resources to

accomplish a result." BLACK'S LAW DICTIONARY 698 (10th ed. 2014) (emphasis added). As the Fourth Circuit pointed out, the statute also "modified the term 'expenses' with the term 'all,' clearly indicating that the common meaning of the term 'expenses' should not be limited." Shammas, 784 F.3d at 222. Furthermore, "even though the PTO's attorneys [are] salaried, ... the PTO nonetheless incur[s] expenses when its attorneys [are] required to defend the [PTO] in the district court proceedings, because their engagement divert[s] the PTO's resources from other endeavors." Id. As a result, the Fourth Circuit held that "§ 1071(b)(3) requires a dissatisfied ... trademark applicant who chooses to file an action in district court challenging the final decision of the PTO, to pay, as 'all expenses of the proceeding,' the salaries of the PTO's attorneys and paralegals attributed to the defense of the action." Id. at 227; see also Robertson v. Cooper, 46 F.2d 766, 767, 769 (4th Cir. 1931) (holding that, under a previous version of 35 U.S.C. § 145, the analogous patent provision, the word "'expenses' [includes] more than that which is ordinarily included in the word 'costs,'" and as a result the PTO could recover an attorney's travel expenses).

Moreover, the Fourth Circuit decided that "the American Rule [ ] applies only where the award of attorneys fees turns on whether a party seeking fees has prevailed to at least some degree." Shammas, 784 F.3d at 223. The court went on to conclude "[t]hus a statute that mandates the payment of attorneys fees without regard to a party's success is not a fee-shifting statute that operates against the backdrop of the American Rule." Id. The Fourth Circuit relied, in part on the history of the Lanham Act to reach this conclusion, recognizing that § 1071(b)(3) originated from a similar provision in the Patent Act of 1836, and an amendment to that Act which established "a fund for the payment of the salaries of the officers and clerks herein provided for, and all other expenses of the Patent Office." Id. at 226 (citing Act of July 4, 1836, ch. 357, § 9, 5 Stat. 117, 121) (emphasis added). That provision demonstrates that Congress

intended that the term "expenses," as used in the Patent Act and later in the Lanham Act, contemplated that "expenses" should include the salaries of the agency employees. See id. at 226-27 (explaining that the Lanham Act incorporated the provisions of the Patent Act and allowed judicial review "under the same conditions, rules, and procedure[s] as are prescribed in the case of patent appeals or proceedings").

Booking contends that the Fourth Circuit's analysis in Shammas has been overruled by the recent Supreme Court decision in Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158 (2015), which addressed the proper interpretation of § 330(a)(1) of the Bankruptcy Code. That case involved determining whether the phrase "reasonable compensation for actual, necessary services," which unquestionably allows attorneys to be compensated for services rendered in connection with the administration of a bankruptcy estate, also permits the attorneys to recover fees incurred in successfully defending their fee application. 135 S. Ct. at 2162–63. The Supreme Court held that the phrase did not authorize recovery of the fees the attorneys incurred in defending their compensation claim against the losing party, finding that deviations from the American Rule require "explicit statutory authority." Id. at 2163 (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001)).

Baker Botts is not directly on point because it only interpreted provisions of the Bankruptcy Code, not the Trademark Act, see 135 S. Ct. at 2162, and its narrow holding is that § 330(a)(1) of the Bankruptcy Code does not permit a bankruptcy court to award attorneys' fees for work performed in defending a fee application. Id. In contrast, the Fourth Circuit decision in Shammas is directly addressed whether 15 U.S.C. § 1071(b)(3) allows for the award of attorney fees and concluded that it does. 738 F.3d at 222. Because Baker Botts is not clearly contrary to

the Fourth Circuit's decision, it cannot be said that Baker Botts overruled Shammas. See Shammas v. Lee, 187 F. Supp. 3d 659, 663 (E.D. Va. 2016) (reaching the same conclusion).[4]

Moreover, the Supreme Court has interpreted "expenses" to be a more broad term than "costs." See, e.g., Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2006 (2012). In Taniguchi, the Court specifically distinguished "expenses" from the more limited term "costs," explaining that "costs" represents only a fraction of "expenses," relying specifically on the 1998 Wright & Miller treatise:

> Although costs has an everyday meaning synonymous with expenses, the concept of taxable costs ... is more limited.... Taxable costs are limited to relatively minor, incidental expenses[;] ... such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts.... Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators. Id. at 2006 (emphasis added).

No party has identified any contrary authority in which the Supreme Court has held that the term "expense" categorically excludes attorneys' fees.

Booking relies on the district court opinion in Nantkwest, Inc. v. Lee, 162 F. Supp. 3d 540, 543 (E.D. Va. 2016) to support its interpretation of Baker Botts and its effect on Shammas. In that case, which involved 35 U.S.C. § 145, the analogous fee-shifting statute for patent cases, the court found that the statute did not explicitly allow for the award of attorneys' fees under the Supreme Court's rationale in Baker Botts. 162 F. Supp. 3d at 543. The Nankwest court reasoned that if Congress intends to provide for an award of attorneys' fees, it either explicitly states so

[4] Both the plaintiff and the USPTO in the Shammas case addressed the impact of Baker Botts while the Fourth Circuit considered rehearing, and again before the district court on a motion to vacate. See, e.g., Shammas v. Lee, 187 F. Supp. 3d 659, 662 (E.D. Va. 2016); Petition for Rehearing and Rehearing En Banc, Shammas v. Focarino, 738 F.3d 217 (4th Cir. 2015) (Dkt No. 42). The Fourth Circuit summarily denied the petitions for rehearing and summarily affirmed the district court's denial of the motion to vacate, impliedly rejecting the argument that Baker Botts affected its reasoning. See Shammas v. Lee, 683 F. App'x 195 (4th Cir. 2017) (unpublished).

using the language "attorney's fees," or when using a broad term like "costs" or "expenses," modifies the term to clarify its meaning. See id. (citing 11 U.S.C. § 363(n) (authorizing recovery of "any costs, attorneys' fees, or expenses incurred"); 12 U.S.C. § 1464(d)(l)(B)(vii) (at the court's discretion, obligating federal savings associations to pay "reasonable expenses and attorneys' fees" in enforcement actions); 26 U.S.C. § 6673(a)(2)(A) (requiring lawyers who cause excessive costs to pay "excess costs, expenses, and attorneys' fees"); Fed. R. Civ. P. 37(a)(5)(A) (requiring party at fault to pay "reasonable expenses ... including attorney's fees")). This decision has been reversed by a panel of the Federal Circuit, which expressed serious doubts about whether the American Rule applied to § 145 when, like § 1071(b)(3), the provision makes no reference to prevailing parties. See Nantkwest, Inc. v. Matal, 860 F.3d 1352, 1355 (Fed. Cir. 2017). The panel decision, in turn, has been vacated, pending en banc review by the Federal Circuit. See Nantkwest, Inc. v. Matal, 869 F.3d 1327 (Fed. Cir. 2017). Although the issue of whether attorneys' fees are recoverable is unclear as to § 145, the law in this circuit, reflected in the Fourth Circuit's Shammas decision, compels the Court to find that defendants' attorneys' fees are recoverable under § 1071(b)(3).[5]

**2. The Constitutionality of § 1071(b)(3)**

Plaintiff further contends that § 1071(b)(3) violates the First Amendment by interfering with the right to access the courts. Essentially, it argues that by imposing the USPTO's expenses on even a successful party, the statute unconstitutionally burdens an applicant's right to seek judicial review of USPTO decisions. Although the Supreme Court has recognized that "the right

[5] Although the Federal Circuit's en banc decision in Nantkwest v. Matal would be persuasive authority on the question presented here, the USPTO correctly points out that it would not be controlling in this context. See Def.'s Mot. Expenses at 8 n.1. Only the Fourth Circuit sitting en banc or the Supreme Court could directly overrule Shammas.

of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances," Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1988), this right is not unrestricted, but rather is subject to Congress's power to set limits on the jurisdiction of the federal judiciary. Congress is neither "constitutionally required to create Article III courts to hear and decide cases within the judicial power of the United States," nor to vest those courts that are created "with all the jurisdiction it was authorized to bestow under Article III." Palmore v. United States, 411 U.S. 389, 400–01 (1973). Congress may constitutionally limit access to certain courts, and may constitutionally impose some costs on a litigant's access. See United States v. Kras, 409 U.S. 434, 450 (1973) (refusing to adopt an "unlimited rule that a [litigant] at all times and in all cases has the right to relief without the payment of fees.").

The Seventh Circuit directly addressed the question of whether fee-shifting statutes are constitutional under the First Amendment's Petition clause in Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, which concluded that "the proposition that the first amendment, or any other part of the Constitution, prohibits or even has anything to say about fee-shifting statutes in litigation seems too farfetched to require extended analysis." 814 F.2d 358, 373 (7th Cir. 1987). That court correctly recognized that the imposition of costs or expenses to exercise a right cannot, in and of itself, violate the First Amendment. Id. ("The exercise of rights may be costly, and the first amendment does not prevent the government from requiring a person to pay the costs incurred in exercising a right."). Indeed, extending Booking's argument to its logical conclusion would also call into question the constitutionality of filing fees, statutory costs under 28 U.S.C. § 1920, costs for discovery requests, and other expenses that necessarily place a burden on a litigant's access to a court. It is well-settled that these types of reasonable expenses are constitutional. See, e.g., Roller v. Gunn, 107 F. 3d 227, 238 (4th Cir. 1997) ("If we were to adopt Roller's argument, all filing fees would be unconstitutional, which, of course, they

are not."); Whittington v. Maes, 655 F. App'x 691, 698-99 (10th Cir. 2016) (holding that mandatory court filing fees do not violate the First Amendment).[6]

Additionally, the USPTO is funded by user fees. See Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 10, 125 Stat. 284, 316 (2011) (recognizing the USPTO as exclusively an applicant-funded agency); Figueroa v. United States, 466 F.3d 1023, 1028 (Fed. Cir. 2006). If it were required to defend each of its denial decisions in a de novo civil action, each applicant's fees would have to be substantially increased. Section 1071(b)(3) was intended to be a "straightforward funding provision, designed to relieve the PTO of the financial burden that results from an applicant's election to pursue the more expensive district court litigation." Shammas, 784 F.3d at 226; see also Hyatt, 625 F.3d at 1337. As these types of economic decisions are well within the constitutional authority of Congress, Booking's constitutional argument fails. See Cox v. New Hampshire, 312 U.S. 569, 577 (1941) (holding that a governmental decision to impose fees on the exercise of First Amendment rights is constitutional if the fee is designed "to meet the expense incident to the administration of the act and to the maintenance of public order"); Kwong v. Bloomberg, 723 F.3d 160, 165 (2d Cir. 2013) (discussing Supreme Court cases regarding the constitutionality of governmental fees assessed in connection with activities protected by the First Amendment).

---

[6] The Supreme Court has struck down filing fee requirements in certain state court cases involving domestic disputes; however, these cases address situations where a filing fee presents an insurmountable barrier to the protection of certain fundamental rights. For example, in M.L.B. v. S.L.J., 519 U.S. 102 (1996), the Supreme Court held that Mississippi could not condition an appeal from the termination of parental rights on the payment of a record preparation fee. Similarly, in Boddie v. Connecticut, 401 U.S. 371 (1971), the Court held that Connecticut could not deny a married couple access to divorce proceedings due to an inability to pay court fees. The Court has made clear that in "the mine run of cases" which do not involve "state controls or intrusions on family relationships" filing fees may be required. See M.L.B., 519 U.S. at 123.

Plaintiff relies on BE & K Construction Co. v. NLRB and the Noerr/Pennington doctrine to support its position. In BE & K Construction, the Supreme Court held that, under the First Amendment, an employer's unsuccessful retaliatory lawsuit against unions could not serve as a basis for the NLRB to impose an administrative penalty, absent a finding that suit was also objectively baseless. 536 U.S. 516, 524 (2002); see also Darveau v. Detcon, Inc., 515 F.3d 334, 341 (4th Cir. 2008) (stressing that BE & K Construction affirms that "only those lawsuits that are retaliatory in intent and baseless in fact or law do not implicate First Amendment ... concerns"). Similarly the Noerr/Pennington doctrine safeguards the First Amendment right to "petition the government for a redress of grievances" by immunizing citizens from antitrust liability that may attend the exercise of that right. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, 365 U.S. 127, 138 (1961); Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 362 (4th Cir. 2013). The Supreme Court has since extended the Noerr/Pennington doctrine to encompass "the approach of citizens ... to administrative agencies and to the courts." Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). Plaintiff argues that under these precedents, § 1071(b)(3) fails to provide "the breathing space essential to [the] fruitful exercise" of the right to petition. See Pl.'s Opp. to Mot. Expenses at 16 (quoting BE & K Construction Co, 536 U.S. at 531).

This argument is unpersuasive. As an initial matter, there is an obvious distinction in context. The Noerr/Pennington doctrine and BE & K Construction Co. address the ability of federal agencies or individuals to penalize an entity for filing a lawsuit (to which the agency was not a party). See, e.g., BE & K Construction, 536 U.S. at 524; Cal. Motor Transp. Co., 404 U.S. at 510 (addressing whether a group of highway carriers could maintain an allegation of conspiracy to monopolize against competitors who organized to institute state and federal court proceedings to defeat applications by the plaintiffs). Nothing in that jurisprudence addresses

whether Congress can constitutionally decide to require a party to pay "expenses" as part of filing a civil action in a district court. Indeed, as addressed above, multiple courts have held that Congress can impose such requirements as part of its constitutional power over the jurisdiction of federal courts. See

Further, Booking fails to properly recognize that, in this context, Congress has provided a means to access the federal courts for review of USPTO decisions that does not require the applicant to reimburse expenses. To avoid paying the USPTO's expenses, an applicant may appeal directly to the Federal Circuit. See 15 U.S.C. § 1071(a). Both the Fourth Circuit and Federal Circuit have recognized that this alternative is the essence of the judicial review scheme created by Congress for disappointed applicants in both the trademark and patent contexts. See Shammas, 784 F.3d at 225 ("If the dissatisfied applicant does not wish to pay the expenses of a de novo civil action, he may appeal the adverse decision of the PTO to the Federal Circuit."); Hyatt v. Kappos, 625 F.3d 1320, 1337 (Fed. Cir. 2010). Indeed, the Federal Circuit stated that the alternative review scheme was enacted to "deter applicants from exactly this type of procedural gaming." Hyatt, 625 F.3d at 1337. Although review in the Federal Circuit of agency action is subject to a more deferential standard than in the district court, the agency's decision is still subject to robust judicial scrutiny. Given the clear weight of authority, the Court finds that requiring disappointed applications who opt to have de novo review of the USPTO's decision to pay the USPTO's expenses incurred in defending its decision does not violate the First Amendment.

**3. Reasonableness of Expenses**

Plaintiff further claims that, even if § 1071(b)(3) does include the USPTO's attorneys' fees, those fees are "fixed costs ... little different from utility expenses," because the USPTO would have paid the attorney's salaries regardless of whether this proceeding occurred. Pl.'s

Opp. to Mot. Expenses at 17. Therefore, salaries cannot be "of this proceeding" as required under § 1071(b)(3). Id.

This argument fails. Courts have awarded similar relief in the context of other salaried attorneys. See Shammas, 784 F.3d at 223 (recognizing that the USPTO "incurred expenses when its attorneys were required to defend the Director in the district court proceedings, because their engagement diverted the PTO's resources from other endeavors"); Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 935 (Fed. Cir. 2000) (awarding salaried union attorneys an apportionment of their salaries because the litigation required the lawyers to divert their time away from other pending matters); Wisconsin v. Hotline Indus., Inc., 236 F.3d 363, 365–66 (7th Cir. 2000) (holding that salaried government employees could recover their fees as they relate to the government's opposition to an improper removal of a state court case).

Moreover, Booking cannot credibly dispute that the USPTO attorneys and paralegals dedicated time and resources to defend this litigation when they could have otherwise applied those resources to other matters. Booking essentially endorses a rule that would theoretically permit an award if the USPTO retained outside counsel to defend its interests but not if it elected to proceed on its own. Logically, the meaning of "of the proceedings" cannot turn on the type of attorneys retained to defend the government's interests. As the Federal Circuit has recognized, courts "must equally regard salaried attorneys' time" and "tak[e] into account the opportunity costs involved in devoting attorney time to one case when it could be devoted to others." Nantkwest, Inc. v. Matal, 860 F.3d 1352, 1360 (Fed. Cir. 2017) (quoting Raney, 222 F.3d at 934–35). Here, the USPTO attorneys and paralegals were diverted from other tasks and activities as a result of this litigation, therefore, the costs associated with their time are properly considered "expenses of this proceeding."

Booking also challenges the USPTO's request on the basis that the amount sought is not reasonable. A party seeking to recover fees bears the burden of demonstrating that those fees are reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). A reasonable fee request should exclude "hours that are excessive, redundant, or otherwise unnecessary." Id. Booking's primary argument is that the documentation submitted by the USPTO is insufficient to demonstrate that its request is reasonable. Courts have rejected fee requests on the basis of inadequate descriptions, where such descriptions have failed to provide sufficient information to determine why the time was necessary or relevant. See, e.g., Zhang v. GC Servs., LP, 537 F. Supp. 2d at 814-15 (E.D. Va. 2008); Pinpoint IT Servs. LLC v. Atlas IT Exp. Corp., No. 2:10-cv-516, 2012 WL 4475334, at *6 (E.D. Va. Sept. 27, 2012) (refusing to grant attorneys' fees for tasks that had a general description such as "formulate response").

With its motion, the USPTO submitted a salary chart for each of the employees who worked on this matter:

| **USPTO employee** | **(hours & hourly rate)** | **Personnel expense** |
|---|---|---|
| Mary Beth Walker, Attorney | (418 hours) ($75.69/hr.) | $ 31,638.42 |
| Molly R. Silfen, Second Chair | (89.5 hours) ($76.81/hr.) | $ 6,874.46 |
| Christina J. Hieber, Senior Counsel for Trademark | (29 hours) ($81.43/hr.) | $ 2,361.47 |
| Thomas L. Casagrande, Deposition Counsel | (26 hours) ($76.81/hr.) | $ 1,997.06 |
| Marynelle Wilson, Associate | (137 hours) ($52.17/hr.) | $ 7,147.29 |
| Macia Fletcher , Paralegal | (31.75 hours) ($45.79/hr.) | $ 1,453.83 |
| **Total USPTO Personnel Expenses** | | **$ 51,472.53** |

See Def's Mot. Expenses at 9. Each employee provided a sworn declaration stating their annual salary at the time of the litigation and the number of hours spent on this civil action and, in its reply memorandum, the USPTO supplemented the record with more detailed explanations of

each employee's tasks, based upon review of "contemporaneously created records." Def.'s Reply Supp. Mot. Expenses at 17.

Booking argues that the time records attached to the USPTO's motion do not include sufficient information, containing only generic descriptions such as "[l]itigate and support IP legal actions – dist ct – Sect 1071(b)." See Pl's Opp. to Mot. Expenses at 20; Def.'s Mot. Expenses, Ex. D. at 5. Additionally, it contends that some of the arguments developed by the USPTO, such as the standard of review that should apply, were found by the Court to be "indefensible," see Mem. Op. at 6 n.2 [Dkt. No 87], and the USPTO should not be reimbursed for time spent developing such arguments. Similarly, Booking points out that there is evidence of "over-staffing" because there were six individuals recording time on this matter. See Pl.'s Opp. Mot. to Expenses at 23; see also Pinpoint IT Servs., LLC, 2012 WL 4475334, at *7 (discounting attorney fee award due to "overconferencing").

A similar challenge to the nature of documentation that the USPTO has submitted to support its personnel expenses has been rejected in this district. In Realvirt LLC v. Lee, the court found that "the level of specificity" requested "is not required because the PTO attorneys and paralegals are salaried government employees." 220 F. Supp. 3d 695, 703 (E.D. Va. 2016) As such, the USPTO must use "the actual salaries of the lawyers and paralegal[s] instead of prevailing market rates" to calculate the attorneys' fees, thereby allowing the PTO to be reimbursed for "the portion of its attorneys' [and paralegals'] salaries that were dedicated to this proceeding." Id. at 703-04. The court concluded that the "sworn declarations stating annual salaries and the hours spent on the case ... adequately support[ed] the PTO's requested" fees. Id.

Further, the records submitted demonstrate that there was a reasonable amount of time spent on each of the various discovery motions, depositions, and briefing. The USPTO explains that its personnel system does not allow for individual entries for the specific "tasks performed"

or other specific time records like private law firms, id. at 16, and points out that it attempted to minimize the expenses in this litigation, for example by offering a briefing schedule limited to two briefs per side, rather than the three insisted upon by plaintiff. See id. at 18. The USPTO's attorneys' declarations do not show any cumulative time spent on the same task by multiple attorneys. Based on this analysis, the documentation submitted is sufficient to justify awarding the USPTO the full amount of the attorneys' fees requested.[7]

Booking further contends that there is "no statutory basis" on which to award the USPTO its expert fees, citing 28 USC § 1920, which allows a recovery of expert witness fees only where the expert is court appointed. See Pl.'s Opp. to Mot. Expenses at 24-25. It also argues that the USPTO's citation to Taniguichi is not supportive because that case "merely distinguished the statutory meaning of 'costs' from the normal everyday meaning of 'expenses.'" Id. at 25.

This argument is plainly incorrect. As discussed above, in Shammas, the Fourth Circuit broadly interpreted the term "expenses" as used in § 1071(b)(3) to be consistent with its ordinary meaning, and to include fees for both attorneys and experts. Shammas, 784 F.3d at 222. This broad application is supported by Congress's decision to include "all" as a modifier to the word "expenses," suggesting it did not intend to limit the type of "expenses" recoverable by the USPTO. See id. Moreover, although the direct question in Taniguichi was whether the term

---

[7] Booking does not argue that the attorneys' hourly rates are unreasonable. Indeed, the hourly rate being charged is far lower than the reasonable rates that have been adopted in this district for private attorneys. See Vienna Metro LLC v. Pulte Home Corp., No. 1:10-cv-502, Dkt. No. 263 (E.D. Va. Aug. 24, 2011) (finding that, in 2011, reasonable rates included $130-350/hr for paralegals; $250-435/hr for lawyers with 1-3 years of experience; $350-600/hr for lawyers with 4-7 years of experience; $465-640/hr for lawyers with 8-10 years of experience; $520-770/hr for lawyers with 11-19 years of experience). Here, the rate being charged for the attorney with the most experience—$81.43 per hour for Ms. Hieber—is almost $50 dollars below the lowest rate for paralegals. Had the USPTO hired outside counsel, or even charged the comparable market rate, Booking would be facing much higher expenses.

"interpreter" applied to translations of written materials so as to allow a party to recover the "costs" of document translation, the Supreme Court recognized that the statutory use of "expenses" includes substantially more than the limited term "costs." See Taniguichi, 132 S. Ct. at 2006 ("Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators."); see also Arlington Cent. School Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 297 (2006) (distinguishing the statutory term "costs" from the broader term "expenses"). Indeed, courts have routinely awarded expert witness fees to the USPTO in both § 1071(b)(3) and § 145 actions as "part of the expenses of the proceeding." See, e.g., Realvirt, 220 F. Supp. 3d at 704 (E.D. Va. 2016) (awarding $50,160.00 in expert witness expenses); Hitachi Koki Co. v. Dudas, No. 2007-1504 (D.D.C. Mar. 30, 2017) (Dkt. No. 66) (awarding the USPTO $59,866.43 in expert expenses); Taylor v. Matal, No. 15-1607 (E.D. Va. July 12, 2016) (requiring a plaintiff to post a $40,000 bond to cover "anticipated expert expenses" among other expenses); Sandvik Aktiebolag v. Samuels, No. 89-3127-lFO, 1991 WL 25774, at *2 (D.D.C. Feb. 7, 1991) (ordering plaintiffs to pay USPTO expert expenses).

Booking also argues that the USPTO's expert fees are unreasonable because it provided only a single invoice from its expert, Dr. Edward Blair, stating that he worked 43.5 hours at a rate of $500/hr. See Pl.'s Opp. Mot.to Expenses at 18; Def.'s Mot. Expenses, Ex. C. In Sandvik Aktiebolag v. Samuels, a D.C. district court allowed the USPTO to recover expert fees, but analyzed the hours submitted for reasonableness. See 1991 WL 25774, at *2. Although Dr. Blair submitted only a single invoice, the total of 43.5 hours does not appear to be excessive given the nature of this case. The record demonstrates that Dr. Blair's work included, after evaluating the four trademark applications at issue, the three separate TTAB opinions affirming the denial of registration, and plaintiff's expert report, preparing his own 30-page expert report and being

deposed by Booking. See [Dkt. No. 61], Ex. B. at 3-6. Based on this record, the Court finds that the hours Dr. Blair billed were not unreasonable.

Finally, Booking claims that any expenses awarded should be offset against its own recoverable costs under Fed. R. Civ. P. 54(d)(1) as it is the prevailing party in this action. Pl.'s Opp. to Mot. Expenses at 25. The USPTO does not directly address this argument other than to point out that expert expenses are not a part of the compensable costs generally awarded to a prevailing party. Reply at 20; see also 28 U.S.C. § 1920 (listing the costs recoverable in a bill of costs); id. § 2412(a) (allowing an award for costs enumerated in § 1920 against the United States or a U.S. agency). There is nothing in this record prohibiting Booking, as the prevailing party, from submitting a bill of costs, which may offset some of the payment that it will owe to the USPTO.

## II. CONCLUSION

For the above stated reasons, in an order to be issued with this Memorandum Opinion, defendants' Motion to Alter Judgment [Dkt. No 94] will be granted only to the extent that the Judgment Order will be amended to provide that the '998 and '097 Applications will be remanded to the United States Patent and Trademark Office to be immediately published in the Official Gazette of the Patent and Trademark Office, pursuant to 15 U.S.C. § 1062(a) and defendants' Motion for Expenses [Dkt. No. 98] will be granted.

Entered this 26th day of October, 2017.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge